## WOLLENSAK *v.* REIHER.

APPEAL FROM THE CIRCUIT COURT OF THE UNITED STATES FOR THE NORTHERN DISTRICT OF ILLINOIS.

Argued April 14, 15, 1885.—Decided May 4, 1885.

In view of the state of the art existing at the date of the patent granted to John F. Wollensak for an improvement in transom lifters by original patent No. 136,801, dated March 11, 1873, and by reissued patent No. 9,307, dated July 20, 1880, and the claims of that patent, it must be limited to a combination, with a transom, its lifting arm and operating-rod, of a guide for the upper end of the operating-rod, prolonged beyond the junction with the lifting arm, so as to prevent the operating-rod from being bent or displaced by the weight of the transom; and it is not infringed by the device secured to Frank A. Reiher by patent No. 226,353, dated April 6, 1880.

This was a bill in equity to restrain infringements of a patent. The facts are stated in the opinion of the court.

*Mr. L. L. Bond* (*Mr. Ephraim Banning* and *Mr. Thomas A. Banning* were with him) for appellant.

*Mr. Charles T. Brown* submitted on his brief for appellee.

MR. JUSTICE MATTHEWS delivered the opinion of the court.

This bill in equity was filed by the appellant to restrain the alleged infringement by the defendant of re-issued letters patent No. 9,307, dated July 20, 1880, the original patent, No.

136,801, dated March 11, 1873, having been issued to John F. Wollensak, the appellant, for an alleged new and useful improvement in transom-lifters. This appeal is from a decree dismissing the bill for want of equity.

The specification and drawings of the patent are as follows:

"Figure 1 is a perspective view, showing one means for carrying my invention into operation. Fig. 2 is a side elevation of the same, and Fig. 3 is a detached sectional view.

"Similar letters of reference in the several figures denote the same parts.

"Transom-lifters have heretofore been constructed with a long upright rod or handle jointed at its upper end to a lifting-

*Fig.1.*      *Fig.2.*

*Fig.3.*

arm which extends to and is connected with the side or edge of the transom-sash, the sash being opened or closed by a vertical movement of the long rod. When thus constructed the upright rod is liable to be bent by the weight of the transom,

owing to the want of support at or near the point of junction between the long rod and the lifting-arm.

"The object of my invention is to remedy this difficulty; and to such end it consists in providing the proper support, or support and guide, for the upper end of the lifting-rod during its vertical movements and while at rest.

"This may be accomplished in a variety of ways, one of which I will now proceed to describe in detail, although I wish it clearly understood that I do not limit my invention to this construction, but regard it as covering broadly any construction, combination or arrangement of parts which shall support the long or operating rod and prevent it from being bent or displaced by the weight of the transom.

"In the drawings, $D$ is the door; $T$, the transom-sash, pivoted at top, bottom, or middle, as preferred; $A$, the lifting-arm that connects the sash to the upright rod, passing through two guides, $G$ $G'$, one above and one below the point of junction with the lifting-arm; $R$, a friction roller secured to the lifting-rod so as to bear against the wall and support said rod at its point of junction with the lifting-arm; $n$ $n$, notches cut in the upright rod to receive the end of the set-screw; and $s$, a set-screw arranged, in connection with the lower guide and the rod $U$, so as to be convenient of operation for the purpose of fixing the transom at any required angle. The upright rod is thus supported at three points, to wit, above, below, and at the point where it sustains the weight of the transom. It can also be adjusted and securely fastened so as to open the sash as much or as little as may be desired, and to lock it in that position.

"Having thus described my invention, what I claim as new is—

"1. The combination, with a transom, its lifting-arm and operating-rod of a guide for the upper end of the operating-rod, to prevent it from being bent or displaced by the weight of the transom.

"2. The roller $R$, arranged at the junction of the lifting-arm $A$ and upright rod $U$, in a transom-lifter, substantially as and for the purpose described.

"3. The guide $G'$, arranged above the junction of the lifting-arm and upright rod, in combination with the prolonged rod $U$, the guide $G$, and arm $A$, substantially as and for the purpose specified."

The defences relied on were, that the alleged invention was not patentable; that it had been anticipated by Bayley and

Fig. 1.  Fig. 3.

Fig. 2.  Fig. 4.

Fig. 5.

McCluskey, to whom a patent had been granted, dated July 7, 1868, No. 79,541, for an improvement in railroad-car ventilators; and that the defendant's device, secured to him by a patent dated April 6, 1880, No. 226,353, did not infringe that of the appellant.

The specification and drawings of the appellee's patent are as follows:

"My object is to construct a lifter which will always be ready for use and answer equally well for all kinds of transoms, no matter how the same may be hinged, without exchanging or altering any of the parts, in a simple and durable manner.

"In the drawings forming part of this specification, Figures

1 and 2 show a front view and side elevation of my lifter attached to a transom hinged below. Figs. 3 and 4 show the lifter for transoms hinged above. Fig. 5 shows a front view of the lifter attached to a ventilating-opening hanging obliquely. Fig. 6 shows the lifter attached to a transom hinged sidewise. Fig. 7 shows the lifter attached to a skylight. Fig.

8 shows a front view, Fig. 9 a vertical longitudinal section, and Fig. 10 an inverted plan, of the casing. Figs. 11 and 12 show the top of lifting-rod with adjusting-block. Fig. 13 shows the lower part of the lifting-rod with handle attachment.

"Like letters of reference indicate like parts.

"The casing $A$, which is screwed to the door-frame, is provided on the front plate with a long slot, $a$. Sliding loosely up and down in this casing, $A$, is the adjusting-block $B$, which protrudes by the ear $b$, forming part of this block, through slot $a$. Affixed to block $B$ is the lifting-rod $C$, in such a manner as to allow the rod to turn in said block. For this purpose. the block is provided with a wide slot, as shown in Figs. 9 and 12, into which fits loosely the pin $d$, which penetrates the rod $C$.

"Attached to the transom in a position which is regulated by and depends upon the manner of hinging the same, at about midway between the outer swinging point and the centre of hinge, is the bracket or loop $D$. Attached to this loop is the connecting link or arm $E$, which connects at its other end to the ear $b$ of the adjusting-block.

"A look at the drawings will show that the upward or downward movement of the adjusting-block, caused by the respective movement of the lifting-rod, will be followed by a swinging movement of the transom on its hinges, through the agency of the universal link or arm $E$.

"The inner face of the casing $A$ (shown in Fig. 9) is provided with a series of notches, $e$. The upper end of the rod $C$ is provided with a spiral spring, $F$, which, resting at one end in the hole $f$ of the adjusting-block $B$, is affixed at its other end in a groove $f'$, at the top of rod $C$. This spring $F$ has the tendency to hold the rod $C$, which turns loosely in the block $B$, in such a position as to cause the pin $d$, which projects on both sides of the block $B$, to fall into one of the notches $e$ provided in the casing. Thus the rod, with block $B$ and universal link $E$, is held in place by the action of spring $F$ and pin $d$, and can be moved only by turning the rod $C$ slightly on its axis, so as to disengage the pin $d$ from the notch $e$.

"It will be seen, that, whenever the hand of the operator

should happen to loose its hold upon the rod, the spring $F$ will cause the pin $d$ to fall into the next notch and arrest the further movement of the block $B$, and thereby the movement of the transom. The transom may thus be locked at any desired position.

"The rod $C$ is provided at its lower end with handle $H$, arranged with an opening for the finger, so that the rod may be with convenience turned and lifted or lowered at will.

"For transoms hinged at the lower edge of the frame (shown in Figs. 1 and 2) the transom with loop $D$ hangs in the universal link $E$. The casing $A$ with adjusting-block is affixed above. When operating the same the block bears with its shoulders $h$ upon the inner face of casing A.

"For transoms hinged at the upper frame, as shown in Figs. 3 and 4, the casing is fastened below, so that the adjusting-block may be held by the lowest notch $e$. While the transom is closed the universal link hangs downward from the loop $D$. In this case, when operated, the bearing between block and casing is reversed, and is taken up by a pin, $g$, penetrating through the ear of the block and resting upon the outer face of the casing $A$.

"For oblique transoms the lifter is affixed as shown in Fig. 5. Fig. 6 shows a transom hinged at the side. The casing of lifter is affixed vertically at the hinged side, the adjusting block being in the highest notch when the transom is closed.

"For transoms hinged in the middle the lifter may be affixed either above or below the hinged centre. For skylights the lifter is affixed as shown in Fig. 7.

"It will be seen that the universal link $E$, with its two swivelling loop ends, will always be ready to form a connection between the transom-loop $D$ and the ear $b$ of the adjusting-block, no matter which way the transom may be hinged.

"What I claim as my invention, and desire to secure by letters patent, is—

"1. The casing $A$, with slot $a$, containing the adjusting-block $B$, with upright rod $C$, in combination with chain-link $E$ and loop $D$, all arranged and constructed in the manner as shown, and for the purpose specified.

"2. The adjusting-block $B$, rod $C$, pin $d$, and spring $F$, in combination with casing $A$, provided with slot $a$ and notches $e$ $e$, for the purpose set forth."

The specification of the complainant's patent undertakes broadly to describe the invention, intended to be embraced in it, as "any construction, combination or arrangement of parts which shall support the long or operating rod and prevent it from being bent or displaced by the weight of the transom." But, having reference to the state of the art at the date of the alleged invention, and the claims of the patent, the patentee must be limited to the combination, with a transom, its lifting-arm and operating-rod, of a guide for the upper end of the operating-rod, prolonged beyond the junction with the lifting-arm so as to prevent the operating-rod from being bent or displaced by the weight of the transom.

Putting by the question whether this is a patentable invention in view of the existing state of the art, the claim must be regarded as a narrow one, and limited to the particular combination described. In that view, the defendant's arrangement is no infringement. The difference between the two devices is pointed out, and, as we think, satisfactorily, by Mr. Dayton, an expert witness on behalf of the defendant. He says: "When the sash is opened in the Reiher transom not an ounce of its weight falls upon, either laterally or obliquely, the upright rod. The Reiher transom is provided at its lower end with a block which runs in a guide, and which is so constructed, with inner flanges and an external pin, arranged to bear respectively upon the inner and outer faces of the slotted guide which he employs, and which is fixed on the frame, as to receive all the pressure resulting from the weight of the transom. The handle or the long upright rod in the said Reiher transom is designed and serves wholly as a means of reaching the foot of the lifting-arm and pushing it upward or drawing it downward. As I before stated, not a particle of inward or lateral pressure falls upon the end of this rod by reason of the weight of the transom. In my judgment, such upright rod may, for this purpose, as well be absent as present. I stated that the sole purpose of the long upright rod was to reach and lift the foot of the block with the

end of the lifting-rod. To be accurate, I also state that it serves, additionally, to operate a novel locking device with which said foot-piece of the lifting-arm is provided.

" So far, then, as the function of the guide G' in the Wollensak patent, or the upper guide in the numbers 1 and 3 of the Wollensak transom model, is concerned, I find that the Reiher transom presents a totally different structure, operating on a totally different principle, from that exhibited in the Wollensak transom model

" In my judgment the improvements of Mr. Reiher, as exemplified in the Reiher transom exhibit, are based upon and proceed from a totally different point in the state of the art of transom-lifters, from that admitted to be old in the passage quoted from Wollensak's patent specifications, and upon which Wollensak's improvements are based. It is a matter of common knowledge, I believe, and it is certainly within my personal knowledge, that transoms or flap windows were, long prior to the date of Wollensak's original patent, provided with a pivoted brace, the foot of which was movable against the frame of such window or door. This is precisely the point in the art to which Mr. Reiher in his transom-lifter has applied his improvements. His improvements do not involve the removal of the weight of the transom from a direct bearing against the frame at the foot of the lifting-arm, and have not that object. Mr. Reiher sought, evidently, only to provide a ready, locking device by which the foot of the lifting-arm may be secured at any point quickly, and by which he may at once reach the locking device and lift the transom, through the medium of the long upright rod. Said long upright rod in his case is not, therefore, made stronger or weaker with a view to prevent its bending, and is only strong enough in any case to enable him to push up the foot of the lifting-arm, and, by rotating the rod, to unlock his novel fastening device. There was no fault in the old structure upon which Mr. Reiher has made his improvements like that assigned to the old device upon which Wollensak has improved, namely, the bending of the vertical rod having a lifting-rod connected therewith, because said lifting-arm did not, in the old device attacked by Reiher, have any

vertical rod at all, and because the lifting-arm distinctly bore against the frame instead of against the rod."

It follows, that the decree of the Circuit Court, dismissing the bill for want of equity, was correct. It is accordingly

*Affirmed.*

Argued April 14, 15, 1885.—Decided May 4, 1885.