WOLLENSAK v. SARGENT et al., (three cases.)

(Circuit Court, D. Connecticut. February 20, 1888.)

1. PATENTS FOR INVENTIONS — PATENTABILITY — PRELIMINARY INJUNCTION —
   TRANSOM.
   The invention described in letters patent No. 136,801, reissue No. 9,307,
   issued to John F. Wollensak, July 20, 1880, which merely provides for a proper
   support for the upright rod of a transom lifter, to prevent its being bent by
   the weight of the transom, consisting of a guide or loop beyond the rod's
   junction with the lifting-arm, and the extension of the rod to the loop, is of
   such doubtful patentability as to prevent the issuance of an injunction *pen-
   dente lite* against its infringement.

2. SAME—REISSUE—DELAY.
   The reissue of a patent, which was merely an expansion of the original
   claim, was made eight years after the original grant. No excuse was offered
   for delay during the first four years. *Held*, that the delay invalidated the
   reissue; following *Wollensak* v. *Reiher*, 115 U. S. 96, 5 Sup. Ct. Rep. 1137.

3. SAME—INFRINGEMENT—TRANSOM.
   Defendant's device for lifting transoms having the essential elements de-
   scribed in letters patent No. 191,088, issued May 22, 1877, to John F. Wollen-
   sak, to-wit, a long stationary guide, with holes and notches, a spring locking
   bolt fitting into the holes, a sliding block or head-piece carrying a spring bolt
   up and down the guide, and means for disengaging the locking device with
   one hand, and without changing the hold, is an infringement of such patent,
   following *Wollensak* v. *Reiher*, 28 Fed. Rep. 424.

4. SAME—EXTENT OF CLAIM—IMPROVEMENT.
   The improvement in a transom lifter, embraced in letters patent No. 196,851,
   issued November 6, 1877, to John F. Wollensak, consisting in the substitution
   of a metal plate in place of guide-eyes, and the patentee having voluntarily
   limited his claim to a plate slotted at both ends, a lifter having a plate not
   slotted at both ends is not an infringement.

5. SAME—PATENTABILITY—JUDICIAL DECISION.
   The patentability of the invention described in letters patent reissue No.
   9,307, issued to John F. Wollensak, July 20, 1880, having been cast in doubt
   by the decision of the supreme court in the case of *Wollensak* v. *Reiher*, 115 U.
   S. 87, 5 Sup. Ct. Rep. 1132, in which the court refuses to decide that point,
   acquiescence in the validity of the patent before the decision does not bar
   one from afterwards contesting it.

6. SAME—PATENTABILITY—ADJUDICATION IN FAVOR OF.
   In a suit for the infringement of a patent, the bill was demurred to upon
   the ground of the non-patentability of the invention. *Held*, in a subsequent
   suit for the same cause, that the overruling of the demurrer upon defendant's
   failure to appear and argue it, was not an adjudication in favor of patenta-
   bility.

In Equity.    On motion for preliminary injunction.

*Ephraim Banning* and *Charles R. Ingersoll,* for plaintiff.
*John K. Beach* and *Benjamin F. Thurston,* for defendants.

SHIPMAN, J. These are motions for preliminary injunctions, in three bills in equity, which are founded upon the alleged infringement of four patents, all issued to the complainant, three being for improvements in transom lifters, and the fourth being for an improved sky-light lifter. The first patent is reissue No. 9,307, dated July 20, 1880. The original patent was No. 136,801, dated March 11, 1873. The second patent is reissue No. 10,264, applied for May 31, 1882, and issued December 26, 1882. The original patent was No. 148,538, dated March 10, 1874. The defendant is charged with infringing the third, fourth, fifth, sixth, and ninth claims of the reissue. The third patent is No. 191,088, dated May 22, 1877, and the fourth is No. 196,851, dated November 6, 1877.

Reissue 9,307. This, although a narrow patent, is by far the most important one of the number. In both the original and the reissued patents the state of the art, and the object of the invention, are described as follows:

"Transom lifters have heretofore been constructed with a long upright rod, or handle, jointed at its upper end to a lifting arm, which extends to, and is connected with, the side or edge of the transom sash, the sash being opened or closed by a vertical movement of the long rod. When thus constructed, the upright rod is liable to be bent by the weight of the transom, owing to the want of support at or near the point of junction between the long rod and the lifting arm. The object of my invention is to remedy this difficulty, and, to such end, it consists in providing the proper support, or support and guide, for the upper end of the lifting-rod, during its vertical movements, and while at rest. This may be accomplished in a variety of ways, one of which I will now proceed to describe in detail."

The third claim, which is the only one alleged to be infringed, and which is the same as the original second claim, is as follows:

"3. The guide, G, arranged above the junction of the lifting-arm and upright rod, in combination with the prolonged rod, *h,* the guide, G, and arm, A, substantially as and for the purpose specified."

The first claim of the reissue is a broader one, and was not contained in the original patent.

In *Wollensak* v. *Reiher,* 115 U. S. 87, 5 Sup. Ct. Rep. 1137, this reissue was examined by the supreme court, which defined the extent of the patented invention as follows:

"The specification of the complainant's patent undertakes broadly to describe the invention intended to be embraced in it as 'any construction, combination, or arrangement of parts which shall support the long or operating rod, and prevent it from being bent or displaced by the weight of the transom.' But, having reference to the state of the art at the date of the alleged invention, and the claims of the patent, the patentee must be limited to the combination, with a transom, its lifting-arm and operating rod, of a guide for the upper end of the operating rod, prolonged beyond the junction with the lifting-arm, so as to prevent the operating rod from being bent or displaced by the weight of the transom. Putting by the question whether this is a patentable

invention, in view of the existing state of the art, the claim must be regarded as a narrow one, and limited to the particular combination described."

Thereupon the first claim of the reissue was disclaimed, and the patent was limited to the second and third claims.

In this case, infringement of the third claim not being denied, the only question is the one which was mentioned, but was not decided by the supreme court, viz., whether the invention is a patentable one, in view of the existing state of the art. It will be noticed that the specification states that whereas, before the invention, the long upright rod of the transom lifter was jointed at its upper end to a lifting-arm, which was connected with the edge of the transom, the patented improvement consisted in providing a proper support, or support and guide, for the upper end of the lifting-rod, in order to prevent its being bent by the weight of the transom; and it further appears, from the decision of the supreme court, that the mechanical means were a guide or loop for the upper end of the operating rod, provided beyond the junction with the lifting-arm. The guide above the junction, and the prolongation of the rod, constitute the improvement. In the absence of other knowledge, in regard to the state of the art, than that disclosed by the patent, the patentable character of the invention would seem to me to be but slender, because the strengthening and support of the rod by means of its extension, and its confinement within an additional metallic loop or eye, seem to be the obvious suggestions which would naturally occur to a mechanic. This doubt receives some additional strength from the Bayley & McClusky patent of July 7, 1869, which described an invention for opening and closing a series of railroad passenger car ventilators or transoms. It consisted of a long rod, sliding horizontally in a series of guides past the series of windows, and connected with each window by a separate arm, so that, by sliding the rod forward or backward, the windows will be opened or shut. The device, held vertically instead of horizontally, closely resembles the plaintiff's lifter. This is not an anticipation of the patent in suit, because there is no lifting of a window which bears its weight upon the rod; and, in order to open a series of light ventilators by a horizontally moving rod, the same precautions against the bending of the rod are not required which are necessary to overcome the direct weight and pressure of a heavy transom upon a rod which moves vertically. The only fact connected with the patent which I now regard of importance is that the inventor naturally extended his rod beyond the end window, and beyond the junction of the rod with the lifting-arm connected with that window, and supported the rod in a guide-eye, and thus indicated that, given a transom, or series of transoms, to be opened by a long rod, moving horizontally or vertically, which opens each transom by a lifting-arm connected therewith, there must naturally be an extension of the rod for a greater or less distance beyond the junction, and a support for the end of the prolonged rod.

It is said that the validity of this patent has been settled by acquiescence of the public therein, and by an adjudication of the circuit court

for the Northern district of Illinois. The defendant in *Wollensak* v. *Reiher* successfully defended against a broad construction of the first claim of the reissue before the circuit and supreme courts. After the disclaimer a new bill against the same defendant was filed in the circuit court for the Northern district of Illinois, which was demurred to, it is said, upon the ground of the non-patentability of the third claim, which was manifest upon the face of the patent. The defendant did not appear to argue his demurrer, and, after it was overruled, abandoned further litigation. I do not think that the overruling of a demurrer which the defendant refused to argue, can be fairly considered to be an adjudication in favor of patentability.

Neither, in view of the litigation and its results, has there been such an acquiescence in the validity of the reissue as to raise a presumption in its favor. Neither did the acts of those who represented the defendant in the city of New York, in soliciting and inserting advertisements of the Wollensak lifter in their trade catalogues, create such equities as to call upon the court to stop the defendants' present infringement. The decision of the supreme court had the effect of casting a doubt upon the patentability of the invention, so that the manufacturers were justified in a new examination of the character of the patent, notwithstanding their former policy of non-interference, or of affirmative recognition of its validity. There is, in my opinion, such a fair and reasonable question in regard to the validity of the third claim, as to prevent the issuing of an injunction *pendente lite* against its infringement.

Reissue No. 10,264. The invention of this reissue was an improvement upon the lifter described in reissue 9,307. It provided "means for supporting the upright rod against the bending pressure of the sash when the latter is hinged at the bottom," and "improved means for connecting the lifting-arm to the transom." The only question which need now be considered is in regard to the validity of the claims which are said to have been infringed. This reissue has also been before the supreme court in *Wollensak* v. *Reiher*, 115 U. S. 96, 5 Sup. Ct. Rep. 1137, in which case a demurrer to the bill was sustained, upon the ground that on the face of the bill, which contained copies of both original and reissued patents, the claims which were alleged to be infringed, and which were the same as those which are the subject of this bill, were expansions of the original claims, and not covered by them; and that the manifest delay of two years or more in applying for the reissue made it invalid, unless accounted for and shown to be reasonable; and that the bill did not adequately explain the cause of the delay. The question, therefore, for consideration is whether the cause of the delay is now adequately explained and shown to be reasonable. The original patent was granted in March, 1874. The reissue was applied for in May, 1882. The patentee shows reasons for the delay from 1878 to 1882, whether adequate or inadequate it is not necessary to consider, because he does not attempt to show any reason for the delay from 1874 to 1878. There was, so far as appears from the bill, or from the affidavit, a contented acquiescence in the character and extent of his patent for four years; and therefore

there was a delay, the cause of which has not been explained, for a period of time which compels the court to declare that the expanded claims are invalid.

"The settled rule of decision is that if it appears, in cases where the claim is merely expanded, that the delay has been for two years or more, it is adjudged to invalidate the reissue, unless the delay is accounted for, and excused by special circumstances which show it to have been not unreasonable." *Wollensak* v. *Reiher*, 115 U. S. 96; 5 Sup. Ct. Rep. 1137.

Patents Nos. 191,088 and 196,851. The first and second claims only of No. 191,088 are alleged to be infringed, and are as follows:

"1. The sliding block, C, carrying the spring locking bolt, *g*, in combination with the fixed guide-bar, B, connecting rod or rods, *h*, and the operating cord or cords, *f*, substantially as described, for the purpose specified.

"2. The combination of the operating cord, *f*, with the spring locking bolt, *g*, and the sliding block, C, to which the sash is connected, arranged as described, so that the act of pulling the cord backward shall disengage the locking bolt from the bar, B, and a continued downward pull upon the same cord shall raise the sash, substantially as described."

On final hearing of a bill in equity upon this patent, founded upon the same infringement which this defendant has committed, viz., the construction of lifters under the Reiher patent, No. 226,353, dated April 6, 1880, Judge BLODGETT found the fact of infringement, and construed the Wollensak patent as follows:

"The elements in patent No. 196,851 seem to be—*First*, a long stationary guide, provided with holes and notches to receive a spring locking bolt; *second*, a spring locking bolt, adapted to fit into the holes or notches in the long stationary guide, and thus to lock, automatically, the transom at different degrees of opening; *third*, a sliding block, or head-piece, carrying a spring bolt up and down the stationary guide, so that such spring bolt can automatically lock the transom at any desired point; and, *fourth*, means for disengaging the locking device, and opening and shutting the transom with one hand, and without changing the hold." *Wollensak* v. *Reiher*, 28 Fed Rep. 424.

In the *Reiher Case*, the patent of William P. Hagadorn, dated February 8, 1876, in which a notched rod slides through a stationary socket, was before Judge BLODGETT. In this case two additional patents, not in the Illinois case, are relied upon,—one to John E. Beanland, dated February 16, 1875, and the other to George Hayes, dated March 9, 1869. I do not think that the character of this additional evidence is such as to cause me to differ from the opinion of Judge BLODGETT.

The specification of patent No. 196,851 says that—

"The present invention is an improvement upon the transom lifter and lock patented to me March 11, 1873, No. 136,801, (Reissue 9,307,) and which consists in a long, vertical rod, guided in loops or eyes on the side of the door-jamb, and connected to the transom by a jointed arm, the upper eye being secured to the jamb above the junction of the rod with the pivoted arm, for the purpose of guiding the upper end of the rod, and preventing it from bending and binding under the weight of the transom. My improvement consists in dispensing with the guide-eyes, and employing instead a long metal plate, slotted at the upper and lower ends, and secured to or let into the door-jamb

over a vertical groove, in which the guide-rod is placed. The lower end of the rod is connected, through the slot, with an operating knob in front of the plate, and its upper end is also connected, through its slot, with the jointed arm by which the transom is moved."

The claim of the patent was as follows:

"The plate, C, slotted at both ends, and attached to the door-jamb, in combination with the guide or operating rod, E, connected to the lifting-arm of the transom, and carrying the lug, h, at one end, and the adjustable knob, G, at the other end, substantially as described, for the purpose specified."

The file wrapper and contents of the patent were not before Judge BLODGETT, who considered that, while the plate was a slotted one, it was not imperative that it should be actually slotted at both ends. The "file wrapper and contents" of the patent are in this case, and it appears that the claims in the application, which simply described the plate as slotted, were voluntarily erased, and the present claim of a plate slotted at both ends was inserted by amendment. The slotted plate is the important thing in the patent, which is a very slight improvement upon reissue No. 9,307, and, I think, should be strictly confined to the particulars to which the patentee limited his invention, as appears from the amendments to his application. The defendant's lifter is not slotted at both ends, and is, therefore, not an infringement.

Let there be an injunction against an infringement of No. 191,088. The other motions are denied.