BABCOCK et al. v. CLARKSON et al.[1]

(Circuit Court of Appeals, First Circuit.   June 23, 1894.)

No. 84.

1. PATENTS—ASSIGNMENT—ESTOPPEL OF ASSIGNOR.

     The assignment of a patent by the patentee, for a valuable consideration, estops him, when sued for infringement thereof by one deriving title under the assignment, from raising questions of novelty, utility, patentable invention, anticipatory matter, and the state of the art, except so far as the state of the art, and anticipatory matter as a part thereof, may have a bearing on the construction of the patent.

2. SAME—LIMITATION BY PRIOR STATE OF ART—JUMP-SEAT CARRIAGES.

     In the Clarkson patent, No. 300,847, for an improvement in jump seats, the invention, consisting of a combination of a falling tailboard and two seats, so connected by levers and hinges that the movement of the tailboard upward will drop the rear seat out of use, and move the front seat backward, so as to preserve the proper center of gravity, is not a pioneer invention, in view of the prior state of the art, and is not infringed by a combination producing a different set of movements, except that the rear seat moves upward and downward, that seat being left in use. 58 Fed. 581, affirmed.

Appeal from the Circuit Court of the United States for the District of Massachusetts.

This was a suit by Frank A. Babcock and others against Joseph T. Clarkson and others for infringement of a patent. The patent was No. 300,847, issued June 24, 1884, to defendant Clarkson, for an improvement in jump seats. Complainants claimed title under assignments from Clarkson. The circuit court dismissed the bill, and a decree for defendants was entered thereon. 58 Fed. 583. Complainants appealed.

Edward P. Payson, for complainants.

Thomas W. Porter, for defendants.

Before COLT and PUTNAM, Circuit Judges, and NELSON, District Judge.

PUTNAM, Circuit Judge. Joseph T. Clarkson, one of the respondents below, was the original patentee, and the title of complainants is derived under assignments from him for a pecuniary consideration, valuable in law, though said to be small. Consequently, an estoppel operates against him. The precise nature of this estoppel does not seem to have been always clearly apprehended. It is, in effect, that, when one has parted with a thing for a valuable consideration, he shall not, so long as he retains the consideration, set up his own fraud, falsehood, error, or mistake to impair the value of what he has thus parted with. As applied to the specifications of a patent, the vendor patentee is as much barred from setting up that his allegations therein were merely erroneous as that they were willfully false. This is as much in harmony with sound morals as with the fundamental rules of equity law. The estoppel is not technically by record; nor is it the usual estoppel

[1] Rehearing denied August 1, 1894.

in pais, arising from the representations or silence of the party against whom the estoppel is charged, as in Sturm v. Boker, 150 U. S. 312, 14 Sup. Ct. 99, and Brant v. Iron Co., 93 U. S. 326. Consequently, the estoppel which we apply to this case does not run against a patentee whose patent has been sold by his assignee in bankruptcy. These distinctions lay out of this case Cropper v. Smith, 26 Ch. Div. 700, affirmed on this point in Smith v. Cropper, L. R. 10 App. Cas. 249.

Hall v. Conder, 2 C. B. (N. S.) 22, was decided in 1857. It related solely to a question of implied warranty at common law, an essentially different matter from the principle of the equitable rule that one cannot avail himself of his own wrong, which includes error, to the detriment of his privy in title. Much was said in that case with reference to the proposition that the facts were equally within the knowledge of each party; but, in applying the equitable rule referred to, reliance, unless in exceptional cases, is put on the equitable obligations of the vendor, and the question of knowledge is unimportant. In Hall v. Conder an appeal was taken to the house of lords; but we do not find that it was perfected. At any rate, its principles could not have escaped so learned and experienced a lawyer as Lord Romilly, then master of the rolls, who decided Chambers v. Crichley, 33 Beav. 374, in 1864. There the same estoppel was applied as is raised in this case, although the transaction was between partners, who must be presumed to have had equal sources of knowledge. His opinion summarizes the law so well that we give the whole of it on this point, as follows:

"I do not intend to express my opinion as to the validity of Wright's patent. I will assume, for the purpose of my judgment, that it is worth nothing at all. But this is certain: that the defendant sold and assigned that patent to the. plaintiffs as a valid one, and, having done so, he cannot derogate from his own grant. It does not lie in his mouth to say that the patent is not good."

On the whole, the estoppel raised in this case is of the same class as that applied by the supreme court in Brazee v. Schofield, 124 U. S. 495, 8 Sup. Ct. 604, where the court said (page 503, 124 U. S., and page 604, 8 Sup. Ct.) as follows:

"There is another view of this case which would seem to conclude the appellant as to the sufficiency and legality of this notification by the widow. The patent of the United States was issued upon the supposed compliance of the patentees with the requirements of the donation act. That instrument is not in the record, but we must presume that it follows the usual form of such instruments, and recites the compliance of the patentees with the requirements of the act, and the production to the proper officers of satisfactory proof on that point. The appellant derives all the title he asserts through conveyances of the heirs of the deceased settler under the patent. As well observed by the supreme court of the territory, under these circumstances these heirs and their grantees are estopped from 'saying, to the prejudice of any grantee of theirs, but that the husband and ancestor, Amos Short, deceased, duly resided upon and cultivated for the prescribed period the donation land claim known as his, or that by virtue of a full compliance with the essential requirements of the donation act, his widow and children were, at the date of his death, in January, 1853, entitled under the act to that land claim.'"

The principle is recognized in Brant v. Iron Co., 93 U. S. at pages 336, 337.

In Ball & Socket Fastener Co. v. Ball Glove Fastening Co., 7 C. C. A. 498, 58 Fed. 818, we had occasion to consider the effect of an estoppel as against a licensee operating under the peculiar agreement existing in that case, and used the following language:

"So far as this suit is concerned, the various patents referred to in the agreement are to be held valid, and the claims in each to be fully sustained, according to their fair intent, as such claims are usually construed under the rules of the patent laws; and, so far as the validity and extent of the claims are concerned, neither is to be diminished by any prior patents or inventions, known or unknown, disclosed or undisclosed, although they may come in to some extent for the purpose which we will state. The record contains very much touching the state of the art and prior patents. From what we have already said, it is plain that they cannot be introduced here for the purpose of invalidating any of the patents covered by the contract, or any portion of any claim of any of such patents. Nevertheless they, as well as the file wrappers and their contents, are appropriate to be considered for ascertaining the true construction of the various patents involved, and especially for determining whether, according to such construction, the improvements were of a primary or secondary character, and how far the combinations admit of the doctrine of equivalents."

These expressions were special, and, when used, were limited to that case. They happen to define accurately the operation of the estoppel in the case at bar on the questions of novelty, utility, patentable invention, anticipatory matter, and the state of the art; and they leave for our consideration none of these, except the state of the art, and anticipatory matter as a part of the state of the art, and these only as bearing on the construction of the patent.

We do not understand that these propositions are contested by the respondents below, now the appellees; yet we have deemed it necessary to state them at length, in order that we may accurately consider the effect which the patent in question has as between the parties to this suit. We also refer, in this connection, to Clark v. Adie, L. R. 2 App. Cas. 423; Trotman v. Wood, 16 C. B. (N. S.) 479; Crosthwaite v. Steel, 6 R. P. C. 190; Ashworth v. Roberts, 9 R. P. C. 309.

Applying these principles, and construing the patent in suit in the light of the art, we concur in the conclusion of the circuit court, for the reasons stated in the opinion filed in that court.

Decree of the circuit court affirmed.