## SCOTT PAPER CO. *v.* MARCALUS MANUFACTUR-ING CO., INC. ET AL.

No. 54. Argued October 17, 1945.—Decided November 13, 1945.

*Mr. George E. Middleton* for petitioner.

*Mr. Samuel E. Darby, Jr.,* with whom *Mr. Donald J. Overocker* was on the brief, for respondents.

MR. CHIEF JUSTICE STONE delivered the opinion of the Court.

In this patent infringement suit the question is whether the assignor of a patent is estopped by virtue of his assignment to defend a suit for infringement of the assigned patent on the ground that the alleged infringing device is that of a prior art, expired patent.

Automatic Paper Machinery Company, Inc., petitioner's assignor, acquired by assignment, from respondent Marcalus, Patent No. 1,843,429 of February 2, 1932, issued on the application of Marcalus for "a method and machine for mounting a cutting strip of a hard non-metallic substance on an edge of a box blank." The patent describes and claims a method, and a machine for employing it, whereby, in substantially one operation, indurated paper is drawn from a roll and brought into overlapping relationship with the edge of a box blank, when a strip of the paper is automatically cut off and glued to the box blank in such position that its longitudinal edge projects beyond the edge of the box blank. The box thus equipped with the cutting edge of the strip is useful as a dispensing container for rolled wax paper which, as drawn from the roll, may be cut in any desired lengths by drawing it across the

cutting edge at an angle with the plane of the cutter. Marcalus, while an officer and employee of petitioner, made the patented invention and assigned his patent application to petitioner for a valuable consideration. The patent issued on the application as filed, without amendment, after which Marcalus severed his connection with petitioner and organized respondent company, which he controls, and which, like petitioner, is engaged in producing and selling box blanks having a cutting edge.

In the present suit, brought by petitioner for infringement of the assigned patent, respondents defended on the ground that their accused machine is a copy of that of the expired, prior art patent issued to Inman in 1912. The District Court gave judgment for petitioner, 54 F. Supp. 105, holding that inasmuch as respondents were estopped by Marcalus' assignment of the patent to show its invalidity, they could not, by recourse to the prior art to show noninfringement, accomplish the same result by indirection. The Court of Appeals reversed, 147 F. 2d 608, holding that the prior art may be resorted to by the assignor to measure the extent of anticipation for the purpose of limiting the claims of the assigned patent, and thus avoid infringement. Because of the identity patentwise of the Inman patent with the assigned patent and with the accused device, the court held that the claims of the assigned patent were limited to naught, and hence that there could be no infringement.

To sustain its right to enjoin infringement by the assignor of a patented invention anticipated by a prior art patent, petitioner relies on the doctrine of estoppel as applied to the assignor of a patent for value. Its basic principle is said to be one of good faith, that one who has sold his invention may not, to the detriment of the purchaser, deny the existence of that which he has sold. See *Westinghouse Co.* v. *Formica Co.*, 288 F. 330, 333. The rule, as stated by this Court in *Westinghouse Co.* v. *For-*

*mica Co.,* 266 U. S. 342, 349, is "that an assignor of a patent right is estopped to attack the utility, novelty or validity of a patented invention which he has assigned or granted as against any one claiming the right under his assignment or grant. As to the rest of the world, the patent may have no efficacy and create no right of monopoly; but the assignor can not be heard to question the right of his assignee to exclude him from its use. *Curran* v. *Burdsall,* 20 Fed. 835; *Ball & Socket Fastener Co.* v. *Ball Glove Fastening Co.,* 58 Fed. 818; *Woodward* v. *Boston Lasting Machine Co.,* 60 Fed. 283, 284; *Babcock* v. *Clarkson,* 63 Fed. 607; *Noonan* v. *Chester Park Athletic Co.,* 99 Fed. 90, 91."

Respondents, denying that the doctrine of estoppel can rightly be applied to patent assignments, also insist that the present case is not within the scope of the doctrine. Compare *Buckingham Products Co.* v. *McAleer Mfg. Co.,* 108 F. 2d 192 with *Casco Products Corp.* v. *Sinko Tool & Mfg. Co.,* 116 F. 2d 119. Both parties rely on the decision of this Court in the *Formica* case, *supra,* which, although stating that the assignor cannot deny the novelty and validity of the assigned patented invention, nevertheless held that the claims of a patent may be narrowed by reference to the prior art so as to restrict them to so much of the invention described by the specifications as is not exhibited by the prior art. *Klein* v. *Russell,* 19 Wall. 433, 466, 467; *Garneau* v. *Dozier,* 102 U. S. 230; *Wollensak* v. *Reiher,* 115 U. S. 87; *Beidler* v. *United States,* 253 U. S. 447; *Mackay Co.* v. *Radio Corp.,* 306 U. S. 86, 94. Cf. *Hocking & Co.* v. *Hocking,* 4 R. P. C. 255, 434, 6 R. P. C. 69; *Clark* v. *Adie,* 2 App. Cas. 423; *Crosthwaite* v. *Steel,* 6 R. P. C. 190.

This Court in the *Formica* case, passing the question, not present here, whether the estoppel of the assignor extends to claims added by the assignee to the application in the Patent Office, held that the estoppel did not, in any

event, preclude the assignor charged as an infringer from narrowing or qualifying their construction by reference to the prior art, saying, 266 U. S. at 351: "The distinction may be a nice one but seems to be workable." It accordingly, by reference to the prior art, interpreted the claims, by narrowing them to a two-step process, shown by the specifications, which the court found to be the assignor's advance over the prior art, but which was not in terms embodied in the claims. The Court thus sustained the defense of noninfringement by restricting the claims by reference to the prior art, and by holding in effect that the invention assigned was not as broad in scope as the claims would otherwise on their face define it to be.

Petitioner, pointing to the logical embarrassment in applying a doctrine which forbids the assignor to deny validity of the patented invention for want of novelty, but nevertheless allows him to narrow its scope by reference to the prior art in order to save his accused device from infringement, insists that the court below has resorted to the prior art, not for the purpose of narrowing the claims and distinguishing from the prior art something which the assignor invented, but for the purpose of destroying the claims because anticipated. This is said to be precisely the same in purpose and effect as to deny invention for want of novelty. It is urged that the permission thus given to respondent assignor to show want of novelty which he is estopped to deny, is to disregard the estoppel by which, by hypothesis, he is bound.

Respondents, on the other hand, insist that a literal application of the rule of the *Formica* case limits the claims of the assigned patent to a structure having certain minor mechanical additions made by Marcalus to the machine of the Inman patent which respondents copied by their accused device. These additions, it is conceded, may not involve invention, but if so, it is said, respondents are estopped to assert it. And applying the rule of the

*Formica* case they urge that the claims of the patent may nevertheless be narrowed to a machine embodying the additional, minor features not found in the Inman machine, and infringement may thus be avoided.

But in the circumstances of this case we find it unnecessary to pursue these logical refinements, or to determine whether, as respondent asks, the doctrine of estoppel by patent assignment as stated by the *Formica* case should be rejected. To whatever extent that doctrine may be deemed to have survived the *Formica* decision or to be restricted by it, we think that case is not controlling here. For other considerations are dispositive of this case, in which, unlike *Formica,* the accused machine is precisely that of an expired patent. Neither in that case nor in any other, so far as we are advised, was the doctrine of estoppel applied so as to penalize the use of the invention of an expired patent. That we think is foreclosed by the patent laws themselves.

Revised Statutes, §§ 4886, 4884 as amended, 35 U. S. C. §§ 31, 40, provide for the grant of a patent for a term of seventeen years to any person who has invented a "new and useful art, machine, manufacture, or composition of matter." The grant is conditioned upon the filing of an application in the Patent Office describing the invention and the manner of making and using it. R. S. § 4888 as amended, 35 U. S. C. § 33. Revised Statutes, §§ 4895, 4898, 35 U. S. C. §§ 44, 47, authorize the assignment of an invention while the application for a patent is pending and of the patent rights to the invention after the patent has issued. Section 24 (7) of the Judicial Code, 28 U. S. C. § 41 (7), confers on district courts of the United States jurisdiction of cases arising under the patent laws, and R. S. § 4921 as amended, 35 U. S. C. § 70, gives the district courts authority to entertain suits to restrain infringement and for recovery of any resulting damage from the infringement of any right secured by the patent grant.

The enactment of these provisions is the mode by which Congress has chosen to carry into effect the policy sanctioned by the Constitution, Article I, § 8, Cl. 8 "To promote the Progress of Science and useful Arts, by securing for limited Times to . . . Inventors the exclusive Right to their . . . Discoveries." The nature and extent of the legal consequences of the expiration of a patent are federal questions, the answers to which are to be derived from the patent laws and the policies which they adopt. Cf. *Sola Electric Co.* v. *Jefferson Co.*, 317 U. S. 173, 176; *Steele* v. *L. & N. R. Co.*, 323 U. S. 192, 204, and cases cited. By the patent laws Congress has given to the inventor opportunity to secure the material rewards for his invention for a limited time, on condition that he make full disclosure for the benefit of the public of the manner of making and using the invention, and that upon the expiration of the patent the public be left free to use the invention. See *Special Equipment Co.* v. *Coe*, 324 U. S. 370, 378. As has been many times pointed out, the means adopted by Congress of promoting the progress of science and the arts is the limited grant of the patent monopoly in return for the full disclosure of the patented invention and its dedication to the public on the expiration of the patent. *Grant* v. *Raymond*, 6 Pet. 218, 241–242; *Gill* v. *Wells*, 22 Wall. 1; *Bauer* v. *O'Donnell*, 229 U. S. 1; *Motion Picture Co.* v. *Universal Film Co.*, 243 U. S. 502, 510–511, and cases cited.

The aim of the patent laws is not only that members of the public shall be free to manufacture the product or employ the process disclosed by the expired patent, but also that the consuming public at large shall receive the benefits of the unrestricted exploitation, by others, of its disclosures. *Kellogg Co.* v. *National Biscuit Co.*, 305 U. S. 111, 117–120. If a manufacturer or user could restrict himself, by express contract, or by any action which would give rise to an "estoppel," from using the invention of an

expired patent, he would deprive himself and the consuming public of the advantage to be derived from his free use of the disclosures. The public has invested in such free use by the grant of a monopoly to the patentee for a limited time. Hence any attempted reservation or continuation in the patentee or those claiming under him of the patent monopoly, after the patent expires, whatever the legal device employed, runs counter to the policy and purpose of the patent laws. And for the same reason a stranger, such as respondent Marcalus, cannot, by securing and assigning a patent on the invention of the expired Inman patent, confer on petitioner any right to deprive the public of the benefits of the free use of the invention for which the public has paid by the grant of a limited monopoly.

By the force of the patent laws not only is the invention of a patent dedicated to the public upon its expiration, but the public thereby becomes entitled to share in the good will which the patentee has built up in the patented article or product through the enjoyment of his patent monopoly. Hence we have held that the patentee may not exclude the public from participating in that good will or secure, to any extent, a continuation of his monopoly by resorting to the trademark law and registering as a trademark any particular descriptive matter appearing in the specifications, drawings or claims of the expired patent, whether or not such matter describes essential elements of the invention or claims. *Kellogg Co.* v. *National Biscuit Co., supra,* 117–120; *Singer Manufacturing Co.* v. *June Manufacturing Co.,* 163 U. S. 169, 185.

It is thus apparent that the patent laws preclude the patentee of an expired patent and all others including petitioner from recapturing any part of the former patent monopoly; for those laws dedicate to all the public the ideas and inventions embodied in an expired patent. They do not contemplate that anyone by contract or any

form of private arrangement may withhold from the public the use of an invention for which the public has paid by its grant of a monopoly and which has been appropriated to the use of all. The rights in the invention are then no longer subject to private barter, sale, or waiver. Cf. *Phillips Co.* v. *Grand Trunk R. Co.*, 236 U. S. 662; *Midstate Horticultural Co.* v. *Pennsylvania R. Co.*, 320 U. S. 356, 361; *Brooklyn Bank* v. *O'Neil*, 324 U. S. 697, 704. It follows that the patent laws preclude the petitioner assignee from invoking the doctrine of estoppel, as a means of continuing as against respondent, his assignor, the benefit of an expired monopoly, and they preclude the assignor from estopping himself from enjoying rights which it is the policy of the patent laws to free from all restrictions. For no more than private contract can estoppel be the means of successfully avoiding the requirements of legislation enacted for the protection of a public interest. Compare *Pittsburgh, C., C. & St. L. R. Co.* v. *Fink,* 250 U. S. 577, 583 with *Louisville & Nashville R. Co.* v. *Mottley,* 219 U. S. 467, 476–477; *New York Central & H. R. R. Co.* v. *Gray,* 239 U. S. 583, 586–587; *Norman* v. *B. & O. R. Co.,* 294 U. S. 240, 304–305, 309–310, and cases cited. The interest in private good faith is not a universal touchstone which can be made the means of sacrificing a public interest secured by an appropriate exercise of the legislative power. The patent laws preclude us from saying that the patent assignment, which they authorize, operates to estop the assignor from asserting that which the patent laws prescribe, namely, that the invention of an expired patent is dedicated to the public, of which the assignor is a member.

The judgment is affirmed for the reason that we find that the application of the doctrine of estoppel so as to foreclose the assignor of a patent from asserting the right to make use of the prior art invention of an expired patent, which anticipates that of the assigned patent, is incon-

sistent with the patent laws which dedicate to public use the invention of an expired patent. The assignor has a complete defense to an action for infringement where the alleged infringing device is that of an expired patent.

We have no occasion to consider the question discussed in briefs and arguments of counsel, whether the estoppel by patent assignment violates either the terms or policy of the laws against restraints of trade and competition.*

*Affirmed.*

MR. JUSTICE REED considers that the dominant rule of *Westinghouse Co.* v. *Formica Co.,* 266 U. S. 342, 349, is "that an assignor of a patent right is estopped to attack the utility, novelty or validity of a patented invention which he has assigned or granted as against any one claiming the right under his assignment or grant." The fact that the prior art is evidenced by an expired patent does not seem significant to him. Consequently he would reverse.

MR. JUSTICE JACKSON took no part in the consideration or decision of this case.

MR. JUSTICE FRANKFURTER, dissenting.

When by a fair and free bargain a man sells something to another, it hardly lies in his mouth to say, "I have sold you nothing." It certainly offends the rudimentary sense of justice for courts to support one who purports to sell

---

*This question was not raised or argued in *Westinghouse Co.* v. *Formica Co., supra,* nor, so far as appears, in any of the cases cited in that opinion or the English cases which preceded it.

By § 515 of the Restatement of Contracts, a restraint of trade is unreasonable and hence unlawful if it "is based on a promise to refrain from competition and is not ancillary either to a contract for the transfer of good will or other subject of property . . ." See generally as to the validity of contracts not to compete 76 Pa. L. Rev. 244, 257 ff.; Handler, Cases and Materials on Trade Regulation, 102–150.

something to another in saying "What I have sold you is worthless," even though he did not expressly promise that what he sold had worth. The obvious implications of fair dealing in commercial transactions have been part of our law for at least a hundred years. And it would be surprising indeed if the law made a difference whether what was purported to be sold was a diamond, or a secret process for manufacturing a commodity, or a patented machine.

It has never been questioned that courts will not make themselves instruments of unfair dealing when what is sold is a patent. In technical language, the sale of a patent means its assignment. Congress might have confined the right to exploit a patent solely to the patentee. Congress has acted on the contrary policy. Ever since the Act of February 21, 1793, 1 Stat. 318, Congress has sanctioned the right to assign patents, requiring only fulfillment of certain formalities. To be sure, Congress has not said in so many words that the seller of a patent—an assignor—is subject like other sellers to the obligations of fair dealing. It has not said that he cannot turn around on the morrow and render futile that which he has sold by claiming that what he purported to sell as a patent was in truth not a patent, and, since it was not a patent, he, the seller, could not be charged with impairing the worth of the patent by practising it himself. Until this day such a sophistical argument to accomplish overreaching in a business transaction has uniformly been rejected by the courts, and it has been rejected by this Court on basic considerations of "fair dealing." *Westinghouse Co.* v. *Formica Co.*, 266 U. S. 342, 350. It is relevant to recall that insistence on this doctrine was unanimously made in the *Formica* case by a Court which included Mr. Justice Brandeis, than whom no one was more zealously alert against the slightest inroads upon the public interest through undue extension of patent rights. It is important to emphasize that the principle of good faith which the

conscience of equity has thus enforced binds only an assignor who seeks to use the courts to defeat that which he purported to sell. It merely restricts one person, the assignor, from denying that he sold a patent when he purported to sell it, leaving the whole rest of the world free to assail the validity or novelty of the patent.

To be sure, the patent legislation does not in so many words formulate this doctrine of fair dealing between assignor and assignee. But patent legislation, like other legislation and indeed like all compositions, impliedly contains presuppositions which need not be spelled out precisely because they are taken for granted. The fair intendment of a patent assignment authorized by Congress is as much to be respected as the same meaning explicitly stated. Patent legislation is part of the great body of law. Familiar equitable doctrines, applicable to the whole domain of law and unquestioned as part of the judicial process, are infused into specific enactments dealing only with the specific problems that call for specific formulation. If warrant in the language of Congress had to be found for all adjudications made by this Court in litigation involving patents, no inconsiderable volume of decisions drawn from general equitable principles ought never to have been made and should be undone.

The principle of fair dealing as between assignor and assignee of a patent whereby the assignor will not be allowed to say that what he sold as a patent was not a patent has been part of the fabric of our law throughout the life of this nation. It has been undeviatingly enforced by English-speaking courts in this country, in England, in Canada, and Australia. See, e. g., Oldham v. Langmead, cited in Hayne v. Maltby, 3 T. R. 438, 439, 441 (1789); Indiana Mfg. Co. v. Smith, 10 Can. Exch. 17 (1905); Shepherd v. Patent Composition Pavement Co., 5 Aust. Jur. 27 (1874). If there are reasons of public policy against the continued application of this equitable doc-

trine in the case of a patent, Congress has ready means of undoing that which has always been part of the patent law, as is true of other provisions which in its wisdom may call for change. This doctrine, voluminously applied in the Law Reports, has never been questioned by Congress in the successive enactments amending the patent law. Only very recently bills dealing with this subject have been introduced but have not yet been acted upon. See, *e. g.*, H. R. 97 and H. R. 3462, 79th Cong., 1st Sess. (1945); H. R. 3874, 78th Cong., 1st Sess. (1943). The place for reconsidering the policy which this Court more than twenty years ago characterized as "a rule well settled by forty-five years of judicial consideration," *Westinghouse Co.* v. *Formica Co., supra,* at 349, is the Congress. That forum is not confronted with the stark alternatives of either adhering to the rule or wiping it out, but has the wide range of legislative discretion in considering what is good and what is bad in the rule and fashioning legislation appropriate to the diversified aspects of the problem.

The Court professes neither to reject, nor to adhere to, the equitable principle of fair dealing reaffirmed by the *Formica* case. It finds ground for avoiding what seem to me to be inescapable alternatives by the claim that the assignor here purported to assign a patent which turns out to be invalid because it now appears that it was based on an earlier expired patent. Since an expired patent makes it part of the public domain, the assignor, although he had sold what need not have been bought, could enter the domain like the rest of the public. So goes the argument. But this, I submit with all respect, is to throw out the baby with the bath. For it amounts to saying that the assignor in raising invalidity in a suit for infringement is just a part of the general public and can ask the Court to enforce every defense open to the rest of the public. The essence of the principle of fair dealing which binds the assignor of a patent in a suit by the assignee, even

though it turns out that the patent is invalid or lacks novelty, is that in this relation the assignor is not part of the general public but is apart from the general public. The isolated, individual relation between assignor and assignee, due to the sale by the assignor of something which he afterwards should not be allowed to·say was nothing, is the basis of the doctrine of fair dealing which operates against him and against nobody else. That doctrine is wholly consistent with the right of the general public to the free and unfettered use of a patent after its time has expired. It is suggested, also, that the public is harmed by removing the assignor from the ranks of actual or potential manufacturers of what is covered by the patent. But that is true of every case in which the assignor is barred from questioning the validity of his assignment. As against the loss to the public of one possible manufacturer is put the public policy of fair dealing between man and man. That is the meaning of the *Formica* doctrine.[1]

---

[1] The complicated facts in the *Formica* case have somewhat obscured the true scope and meaning of that decision. What was decided is perhaps best disclosed in the lower court's opinion which was here affirmed. That opinion was by Judge Denison who spoke with special authority on patent law: "It may be granted that these two claims [in controversy] were properly readable upon the specification and drawings of the application signed by O'Connor [the assignor]—that is to say, in the language of the Patent Office, that he had the right to make these claims. Nevertheless they expressed a conception of the invention, which rested solely on the 'nonplaniform' shape of the article and was in this respect broader than any claim which O'Connor had drafted, and if the prior Baekeland patent had been known to O'Connor, as it became known to his assignees when it later compelled them to abandon the original broad claims, he probably never would have claimed as his the invention thus formulated. The record does not support the inference that O'Connor either expressly or impliedly represented to the Westinghouse Company [the assignee] that he was the inventor of the process defined in these two claims, and hence the claim of estoppel must fail." 288 F. 330, ·334.

A machine that is not patentable because it is not novel is just as much part of the public domain as a machine on which the patent has expired. If public policy does not preclude an individual from being held to a fair bargain with another when he purported to sell as a patent what in fact was never patentable, what is there in reason—for there is nothing in what Congress has said—that should preclude enforcement of a fair bargain whereby an individual agreed, in effect, not to compete with another regarding a machine which turns out not to have been patentable because it represented an expired patent open to all the rest of the world? Of course, parties cannot by agreement defeat an explicit provision or purpose of legislation. One shipper cannot, for instance, secure the private advantage of a lower rate when the Interstate Commerce Act provides for equality of rates among shippers, *Pittsburgh, C., C. & St. L. R. Co.* v. *Fink*, 250 U. S. 577; nor can an employer defeat the protective purpose of the Fair Labor Standards Act setting minimum wage limits, by an agreement based on the inequality of bargaining power between employers and individual employees, *Brooklyn Savings Bank* v. *O'Neil*, 324 U. S. 697, 706. There is nothing comparable to such situations in the language or purpose of the patent laws regarding assignment of patents. On the contrary, as we have seen, the principle whereby an assignor is held to his bargain with the assignee has been part of the texture of our patent law throughout its history. Congress in its successive enactments modifying the patent law has respected this principle and left it untouched.[2]

---

[2] Nor can the assignor of an expired patent, when the assignee seeks to hold him to his bargain, invoke the law condemning contracts in restraint of trade. So far as the hitherto recognized principle of fair dealing between an assignor and his assignee unduly restrains the freedom of action of the assignor, it merely restrains in the manner that every contract is a restraint of trade. See *Chicago Board of*

Happily law is not so divorced from ethical standards that a hitherto unquestioned principle of fair dealing should be deemed hostile to any branch of the law. But if the principle of fair dealing as between the assignor and the assignee of a patent that has for so long been part of the patent law is to be repudiated judicially, it is better to do so explicitly, not by circumlocution.

---

*Trade* v. *United States*, 246 U. S. 231, 238. And it restrains equally whether what is assigned is an expired patent or something that never was a patent. In fact, however, the doctrine of such fair dealing does not run counter to the considerations by which the law outlaws restraints which persons may impose on themselves by contract. For such an implied restraint as is found in the assignment of a patent, purportedly valid but in fact invalid, like all reasonable restraints, does not offend the objections to unreasonable restraints. The underlying rationale of the law against unreasonable restraints is twofold. The first of these reasons is that the law will not lend its aid in the enforcement of a contract by means of which a man may deprive himself of the possibility of earning a livelihood and deprive the public of the "benefit of his labor." The second, "that such restraints tended to give . . . the beneficiary of such restraints, a monopoly of the trade, from which he had thus excluded one competitor, and by the same means might exclude others." Taft, J., in *United States* v. *Addyston Pipe & Steel Co.*, 85 F. 271, 279, *modified*, 175 U. S. 211. Neither consideration is pertinent here.