**CLASSIC FILM MUSEUM, INC., Plaintiff,**

v.

**WARNER BROS., INC., Defendant.**

**Civ. No. 75–5 B.**

United States District Court, D. Maine.

Oct. 7, 1981.

---

Robert N. Moore, Island Falls, Me., Douglas M. Smith, Dover-Foxcroft, Me., Robert E. Mittel, Portland, Me., for plaintiff.

John W. Philbrick, Howard H. Dana, Jr., Portland, Me., Stanley Rothenberg, New York City, for defendant.

## MEMORANDUM OF OPINION AND ORDER OF THE COURT

GIGNOUX, Chief Judge.

In January 1975 plaintiff Classic Film Museum, Inc. (Classic) instituted this action for declaratory and injunctive relief and damages against Warner Bros., Inc. (Warner), claiming, in essence, that Warner had "engaged in acts of unfair competition" and "violated the antitrust laws of the United States by conspiring with others" to prevent Classic's attempts to lease prints of the original 1937 version of the motion picture "A Star is Born" by wrongfully asserting ownership of a common law copyright in the underlying screenplay.[1] Warner counterclaimed for infringement of its common law copyright and for return of the film prints in Classic's possession.

On an agreed statement of facts, this Court held that Warner's common law copyright in the unpublished screenplay could not be enforced against a distributor of the derivative motion picture on which the statutory copyright had not been renewed. *Classic Film Museum, Inc. v. Warner Bros.,*

1. Jurisdiction is variously asserted under 28 U.S.C. §§ 1331, 1332, 1337 and 1338.

*Inc.,* 453 F.Supp. 852 (D.Me.1978), *aff'd,* 597 F.2d 13 (1st Cir. 1979). Warner then dismissed its remaining counterclaim, and Classic abandoned its claims for declaratory and injunctive relief. There remains for determination by the Court only Classic's claim for damages resulting from Warner's alleged violation of Section 1 of the Sherman Act, 15 U.S.C. § 1.[2]

The instant phase of the action has been tried to the Court without a jury, and the issues have been comprehensively briefed and argued by counsel. The following memorandum opinion contains the Court's findings of fact and conclusions of law, as required by Fed.R.Civ.P. 52(a).

I

THE FACTS

Classic, a Maine corporation, is engaged in the business of licensing and renting prints of motion picture films for theatrical, nontheatrical and television exhibition. Warner, a Delaware corporation, produces and distributes motion picture films for theatrical, nontheatrical and television exhibition.

Classic initially leased films only to schools and libraries, but in the mid-1970's it ventured into the television market. To that end, in November 1974 Classic negotiated a contract with RKO General (RKO), whereby Classic leased three films to RKO for a specified number of broadcasts on several television stations over a six-year period. One of the leased films was the 1937 version of "A Star is Born." The RKO contract required Classic to obtain errors and omissions insurance for the films involved, the insurance to include liability coverage for copyright infringement. Classic's attorney, Stuart A. White, Esq., applied for such insurance in the fall of 1974.

On December 23, 1974, while Classic's insurance application was pending, an attorney in Warner's legal department, Bernard R. Sorkin, Esq., wrote Classic that its offering for telecasting of two prints—"A Star is Born" and "Tarzan and the Green Goddess" —constituted a violation and infringement of Warner's rights to the pictures, as well as of Warner's rights to the underlying literary material and music. Sorkin demanded that Classic cease offering these films and return to Warner all prints in Classic's possession. Otherwise, Warner would "feel free to take such action as it deems appropriate without further notice."

On December 31, 1974, White replied to Sorkin's letter. White stated that Classic did not have a print of the Tarzan motion picture and that, with respect to "A Star is Born," Classic intended to lease the original 1937 version of that picture, the statutory copyright on which it believed to have expired in 1965.

In response to White's letter, Sorkin, by a letter dated January 10, 1975, reiterated Warner's claim to exclusive rights in the 1937 version of "A Star is Born" by virtue of its common law copyright in the underlying literary property. As in his initial letter of December 23, 1974, Sorkin stated that Warner would "feel free to take such action as it deems appropriate" if Classic did not return the prints.

By a letter dated January 24, 1975, White notified Classic's insurance agent, Charles W. Tucker, with a copy to RKO's counsel, Paul J. Quinn, Esq., that Warner claimed exclusive rights to "A Star is Born." White added that he believed Warner's claim was "without legal justification."[3] Quinn contacted Warner's chief studio counsel, Paul Knecht, Esq., who confirmed that Warner

---

2. At oral argument, Classic's counsel conceded that the necessary predicate for a claim under Section 2 of the Sherman Act, 15 U.S.C. § 2, had not been laid. *See generally United States v. Grinnell Corp.*, 384 U.S. 563, 86 S.Ct. 1698, 16 L.Ed.2d 778 (1966). Nor has Classic pressed any right to recover for alleged acts of unfair competition or under state law.

3. Quinn apparently had previously learned of Warner's claim as the result of a January 7, 1975 telephone call from Chris Steinbrunner, Manager of Film and Program Service at WOR-TV in New York, in which Steinbrunner reported a possible dispute over the film rights to "A Star is Born" with a Los Angeles television station which claimed to have purchased exclusive broadcast rights from Warner.

did claim exclusive rights in the film and intended to bring an action against Classic, if necessary to enforce those rights. Knecht suggested that Warner might be forced to name RKO as a defendant if RKO intended to broadcast the film.

In February 1975, Classic's insurance underwriter, Pacific Indemnity, informed White that Classic's application had been rejected.[4] When White informed Quinn that Classic was unable to obtain the insurance required by the RKO contract, Classic and RKO agreed to modify the contract by deleting "A Star is Born." Under the terms of the modified contract, RKO agreed to lease the other two films in the original contract for the agreed amount, less the approximately $2,000 which it had already paid to Classic.

## II

### THE LAW

■ On the foregoing facts, Classic has wholly failed to establish a violation of Section 1 of the Sherman Act. That section makes illegal "[e]very *contract, combination* in the form of a trust or otherwise, *or conspiracy,* in restraint of trade or commerce among the several States." 15 U.S.C. § 1 (emphasis added). Section 1 proscribes only joint action. *Ford Motor Co. v. Webster's Auto Sales, Inc.,* 361 F.2d 874, 878 (1st Cir. 1966). "Fundamental, then to any section 1 violation is the finding of an agreement between two or more parties." *Id.* Absent such a consensual basis, a Section 1 violation has not been estab-

lished. *Id. See also Walker v. Providence Journal Co.,* 493 F.2d 82, 87 (1st Cir. 1974); *Harvey v. Fearless Farris Wholesale, Inc.,* 589 F.2d 451, 453 (9th Cir. 1979); *Homefinder's of America, Inc. v. Providence Journal Co.,* 471 F.Supp. 416, 421–22, (D.R.I.1979), *aff'd,* 621 F.2d 441 (1st Cir. 1980); 1 Von Kalinowski, Antitrust Laws and Trade Regulation, § 6.01[3].

■ Classic apparently concedes that there was no agreement between Warner and anyone else to restrain Classic's leasing of the film in issue. Classic suggests, however, that the actions of Warner, RKO, the insurance underwriter and various television stations amounted to an unwitting or "unwilling" combination or conspiracy to block Classic's lease of the film.

Classic's position lacks both factual and legal support. The cases upon which Classic relies present situations in which there were specific agreements among the parties, although acquiescence in the scheme may have been coerced. *See Albrecht v. Herald Co.,* 390 U.S. 145, 88 S.Ct. 869, 19 L.Ed.2d 998 (1968) (newspaper publisher coerced carrier and others to agree to lure customers away from another carrier who refused to abide by publisher's price ceiling); *Fashion Originators' Guild of America, Inc. v. FTC,* 312 U.S. 457, 61 S.Ct. 703, 85 L.Ed. 949 (1941) (garment manufacturers' guild coerced unwilling members and retailers to agree to cooperate with guild's boycott program); *Ford Motor Co. v. Webster's Auto Sales, Inc., supra* (manufacturer coerced dealers into agreeing not to sell "company cars" to independent used car dealers in the same town).

---

4. At trial, defendant objected on hearsay grounds to the admission of White's testimony concerning his conversations with the underwriter's representative, a Mr. Grant. White testified that Grant had told him that Classic's application had been turned down on the advice of the legal department, which was concerned about Warner's claim *and* insufficient documentation of Classic's right to this film, which Classic had represented to be in the public domain.

 The Court received the evidence subject to a motion to strike. Plaintiff contended that Grant's explanation was admissible to show his "state of mind" under Fed.R.Evid. 803(3) and that the testimony was relevant as showing

that the denial of insurance was a direct result of Warner's claim. Although the Court remains unpersuaded that this evidence comes within Rule 803(3), *see* Advisory Comm. Note, Fed.R.Evid. 803(3), it nevertheless has been considered. Significantly, it developed on cross-examination that Grant did not state that Warner's infringement claim was the sole reason that Classic's application was denied; White admitted that Grant also stated that the underwriter had not been provided with adequate documentation of the source of Classic's films and that the underwriter did not generally issue the requested coverage for films in the public domain.

**1234**

The facts of record in the present case do not support plaintiff's contention. The evidence neither establishes, nor supports a justifiable inference of, coerced acquiescence in a combination or conspiracy. The evidence before the Court shows that Warner acted unilaterally in deciding to assert exclusive rights to "A Star is Born." Warner did no more than make a legal judgment about its rights and communicate that judgment to Classic. Nor does the evidence reveal any attempt by Warner to convey this decision to RKO or to the insurance underwriter, or to influence either entity. RKO apparently first became aware of Warner's claim through personnel at one of the New York television stations with which it dealt, and confirmed this understanding by contacting Warner. In deciding to exercise its rights under the contract and to forego leasing an uninsured film, RKO clearly was acting in its own self-interest. Similarly, it was Classic's attorney, White, who informed the insurance underwriter of Warner's claim. There is no evidence to suggest that Warner made any attempt to convey that information to the underwriter, or in any way to affect the latter's insurance decision.

In sum, the present record shows that Warner unilaterally elected to press its rights in the film and that RKO and the insurance underwriter, without coercion by Warner, independently made decisions dictated solely by their own business interests. This does not fall within the proscription of the Sherman Act. *See Homefinder's of America, Inc. v. Providence Journal Co.,* supra at 421. *See also United States v. Colgate & Co.,* 250 U.S. 300, 307, 39 S.Ct. 465, 468, 63 L.Ed. 992 (1919); *United States v. Parke, Davis & Co.,* 362 U.S. 29, 44, 80 S.Ct. 503, 511–12, 4 L.Ed.2d 505 (1960).

Classic appears to argue that, even though Warner was not engaged in a combination or conspiracy, Warner nevertheless violated the antitrust laws by unlawfully attempting to prolong the term of the expired statutory copyright on "A Star is Born." In advancing this argument, Classic relies upon *Brulotte v. Thys Co.,* 379 U.S. 29, 32, 85 S.Ct. 176, 179, 13 L.Ed.2d 99 (1964), in which the Supreme Court held that it is unlawful for a patentee to attempt to extend a statutory patent monopoly by contract. *See also Scott Paper Co. v. Marcalus Mfg. Co.,* 326 U.S. 249, 256, 66 S.Ct. 101, 104, 90 L.Ed. 47 (1945). The instant case is, however, distinguishable from *Brulotte.* The basis of Warner's infringement claim against Classic was not its expired statutory copyright; Warner claimed that its common law copyright in the underlying literary work and music gave it exclusive rights to the derivative film. Although this Court and the Court of Appeals rejected this argument, it was not frivolous or a sham. *See Classic Film Museum, Inc. v. Warner Bros., Inc.,* supra, 453 F.Supp. at 855, 597 F.2d at 14 (and cited cases). The Sherman Act does not preclude a good faith attempt to assert or protect a patent or copyright interest, even if unsuccessful. *Handgards, Inc. v. Ethicon, Inc.,* 601 F.2d 986, 992–96 (9th Cir. 1979), *cert. denied,* 444 U.S. 1025, 100 S.Ct. 688, 62 L.Ed.2d 659 (1980); *Edward B. Marks Music Corp. v. Colorado Magnetics, Inc.,* 497 F.2d 285, 290–91 (10th Cir. 1974); *Alberto-Culver Co. v. Andrea Dumon, Inc.,* 466 F.2d 705, 711 (7th Cir. 1972). *See California Motor Transport Co. v. Trucking Unlimited,* 404 U.S. 508, 92 S.Ct. 609, 30 L.Ed.2d 642 (1972); *Semke v. Enid Automobile Dealers Ass'n,* 456 F.2d 1361, 1366 (10th Cir. 1972).

### ORDER

Judgment will be entered for defendant Warner Bros., Inc. against plaintiff Classic Film Museum, Inc., dismissing the action with prejudice and with costs.

IT IS SO ORDERED.