UNITED STATES of America, Plaintiff,

v.

UNDETERMINED QUANTITIES OF CLEAR PLASTIC BAGS OF AN ARTICLE OF DRUG FOR VETERINARY USE ... WRM–RID Dog Wormer ... Defendant.

No. C–2–94–0725.

United States District Court, S.D. Ohio, Eastern Division.

March 31, 1997.

Marcia Jane Harris, United States Attorney's Office, Columbus, Robert F. Church, United States Attorney, Food and Drug Administration, Rockville, MD, for Plaintiff.

Douglas Stuart Roberts, Clark, Perdue & Roberts Company, Columbus, OH, for Bingman Laboratories, Inc.

## OPINION AND ORDER

KINNEARY, District Judge.

This matter is before the Court on the Plaintiff's motion for summary judgment. This civil *in rem* action was brought by the government under the Food, Drug and Cosmetic Act (the "Act") to request that this Court enter an order of condemnation and destruction against a seized article. The Court GRANTS the government's motion.

### I. Facts

Bingman Laboratories, Inc. ("Bingman") has manufactured and marketed "WRM–RID Dog Wormer" ("WRM–RID") since 1952. WRM–RID is an animal drug promoted as a treatment for worms in dogs and cats. The formula for WRM–RID has remained the same since 1955. The drug has two active ingredients: piperazine phosphate and arecoline hydrobromide.

Prior to marketing WRM–Bingman contacted the Food and Drug Administration ("FDA") to determine the requirements for marketing drug products. Bingman followed the agency's suggestions. Between 1955 and 1991, the FDA inspected Bingman's plant and took no exception to Bingman's marketing of WRM–RID.

On April 9, 1991, however, the FDA informed Bingman that WRM–RID was adulterated and misbranded in violation of the Food, Drug and Cosmetic Act. Bingman and the FDA engaged in a dialogue regarding the alleged violation. Nevertheless, the FDA filed a complaint alleging that WRM–RID is an "adulterated," "unsafe" "new animal drug" under the Act. Therefore, according to the FDA, WRM–RID is subject to forfeiture and condemnation under the Act. The FDA requests a warrant *in rem* directing the U.S. Marshall to retain and hold an undetermined amount of WRM–RID and to notify any interested individuals. The FDA also requests an order of forfeiture and condemnation of the seized WRM–RID.

On August 4, 1994, a warrant was issued and, on September 12, 1994, an undetermined amount of WRM–RID was seized. The government gave notice to all interested

parties including Bingman. The FDA now seeks summary judgment on its request for an order of forfeiture and condemnation.

Bingman opposes the FDA's motion on several grounds. First, Bingman suggests that it is inappropriate to establish the status of a drug on summary judgment. Second, Bingman argues that WRM–RID is grandfathered out of the Act's requirements. Third, Bingman argues that the FDA has failed to produce any evidence that WRM–RID is not safe and effective and therefore WRM–RID is not a "new" drug subject to forfeiture and condemnation. Fourth, Bingman asserts that WRM–RID was not in interstate commerce and so does not satisfy a jurisdictional prerequisite of the Act. Fifth, Bingman claims that the FDA's seizure of WRM–RID violated Bingman's constitutional right to due process. Finally, Bingman suggests that the FDA's failure to prosecute Bingman for marketing WRM–RID in the past bars the current action.

## II. Summary Judgment

### A. Standard

Rule 56(c) of the Federal Rules of Civil Procedure provides as follows:

> [summary judgment] ... shall be rendered forthwith if the pleadings, depositions, answers to interrogatories and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law.

Summary judgment is appropriate where, based on the documentary evidence, there is no genuine issue of material fact to be tried. *Lashlee v. Sumner*, 570 F.2d 107, 111 (6th Cir.1978). The party moving for summary judgment bears the burden of establishing the absence of a genuine issue of material fact. *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 157, 90 S.Ct. 1598, 1608, 26 L.Ed.2d 142 (1970). In considering whether to grant a motion for summary judgment, a court must believe all of the non-moving party's evidence and draw all reasonable inferences from the evidence in her favor. *Russo v. City of Cincinnati*, 953 F.2d 1036, 1042 (6th Cir. 1992).

### B. Appropriateness of Summary Judgment

■ Bingman asserts that "[s]ummary judgment motions by the FDA to establish a disputed product status are generally disfavored by the courts." (Doc. # 9 at p. 4 (citing *United States v. Article of Food Consisting of 345–50 Pound Bags*, 622 F.2d 768 (5th Cir.1980)).) The Court disagrees. *See, e.g., United States v. An Article of Drug Consisting of 4,680 Pails*, 725 F.2d 976, 985 (5th Cir.1984) (actions brought under the Act may be decided on summary judgment where studies relied upon by drug proponent do not satisfy statutory and regulatory standards).

## III. WRM–Rid is an Adulterated New Animal Drug

### A. The FDA's Case

■ The Act prohibits "[t]he introduction ... into interstate commerce of any ... drug ... that is adulterated." 21 U.S.C. § 331(a). Thus, to carry its burden on summary judgment under the Act, the government must show that there is no genuine issue of material fact that WRM–RID is a drug which is adulterated and which was held for sale after shipment in interstate commerce. The Court addresses the following two issues: (1) whether WRM–RID is an adulterated drug and (2) whether it has shipped in interstate commerce.

#### 1. Adulterated Drugs

The central issue in dispute is whether WRM–RID is adulterated. There is no dispute that WRM–RID is an animal drug within the meaning of the Act. 21 U.S.C. § 321(g)(1)(B). Therefore, the main issue is whether WRM–RID is adulterated. An adulterated drug is a "new" drug that is not the subject of either an approved application with the FDA or an effective investigational exception. 21 U.S.C. §§ 351(a)(5), 360b(a)(1). WRM–RID is neither the subject of an approved new animal drug application nor the subject of an effective investigational exception. Therefore, the question is whether WRM–RID is a "new" drug. The Court finds that WRM–RID is a new drug.

■ An animal drug is "new" under the Act if the drug is not "generally recognized as safe and effective" for use as recommended in its labeling. If the drug is a combination of drugs then the combination must be generally recognized as safe and effective even if each component part is generally recognized as safe and effective. 21 U.S.C. § 321(p)(1); 21 C.F.R. § 510.3(i)(2). *International Nutrition v. United States Department of Health*, 676 F.2d 338, 341 (8th Cir.1982).

■ The sponsor of a drug has the burden of coming forward with substantial evidence that the drug is generally recognized as safe and effective.[1] *Ubiotica Corp. v. Food and Drug Administration*, 427 F.2d 376, 378 (6th Cir.1970). This requires evidence of an "adequate and well controlled investigation supporting" the safety and effectiveness of the drug. *Weinberger v. Hynson, Westcott & Dunning, Inc.*, 412 U.S. 609, 630, 93 S.Ct. 2469, 2483, 37 L.Ed.2d 207 (1972). "Clinical impressions of practicing physicians and poorly controlled experiments" do not constitute substantial evidence. *Id.* at 630, 93 S.Ct. at 2483. Similarly, "[i]solated case reports, random experience and reports lacking the details which permit scientific evaluation will not be considered.'" *Id.* at 630, 93 S.Ct. at 2483 (quoting 21 C.F.R. § 130.12(a)(5)(ii)(c)).

■ Bingman has failed to come forward with substantial evidence that WRM–RID, a combination drug, is generally recognized as safe and effective. The sponsor of a combination drug cannot show that the drug is safe and effective merely by showing that each component part is generally recognized as safe and effective; instead, the sponsor must show that the combination is safe and effective. *United States v. An Article of Drug*, 513 F.2d 1127, 1129–30 (9th Cir.1975). Where a drug sponsor cannot produce evidence of research concerning the safety and effectiveness of a drug combination, then judgment should be rendered against that party. *Id.* at 1129. Bingman has produced evidence that tends to establish that each of the component parts of WRM–RID—arecoline hydrobromide and piperazine phosphate—is generally recognized as safe and effective. (*See* Doc. # 9 at pp. 8–14 and referenced exhibits.) The great majority of Bingman's evidence, however, fails to address the safety and effectiveness of these chemicals in combination. (*Id.*) The only evidence that Bingman introduces that relates to WRM–RID as a combination drug is its 43 year "track record." (See Doc. # 9 at pp. 10, 13.) This evidence is not sufficient to satisfy the "substantial evidence" test. The track record is not a well-controlled investigation and it does not contain the detail necessary to permit scientific evaluation. Therefore, this evidence does not constitute "substantial evidence."

Because there is no evidence in the record showing that WRM–RID is generally recognized as safe and effective, WRM–RID is a "new" drug. According to the foregoing evidence, therefore, WRM–RID is adulterated.

## 2. Interstate Commerce

■ The FDA may bring a condemnation proceeding against an animal drug only if the drug "is adulterated ... when introduced into or while in interstate commerce or while held for sale ... after shipment in interstate commerce." 21 U.S.C. § 334(a)(1). This standard is satisfied if any component of the animal drug has been shipped in interstate commerce. *See, e.g., Palmer v. United States*, 340 F.2d 48, 49 (5th Cir.1964) ("Shipment of the active ingredient of a drug is the equivalent of shipping the drug."); *see also* 21 U.S.C. § 321(g)(1)(D) (defining "drug" to include "articles intended for use as a component of any" drug).

1. Bingman asserts that the FDA's motion should be denied because the FDA has failed to produce evidence that WRM–RID is unsafe. (Doc. # 9 at pp. 14–15.) The FDA does not bear the burden of proof to establish that a drug is "new" under the Act; Bingman bears that burden. *See, e.g., Weinberger v. Hynson, Westcott & Dunning, Inc.*, 412 U.S. 609, 631, 93 S.Ct. 2469, 2484, 37 L.Ed.2d 207 (1973) (holding that the FDA may withdraw application effective prior to adoption of 1962 amendments if applicant had not provided substantial evidence of drug's efficacy). The FDA, as the party moving for summary judgment, bears the burden of showing an absence of a genuine issue of material fact. *Adickes*, 398 U.S. 144, 157, 90 S.Ct. 1598, 1608, 26 L.Ed.2d 142.

■ The FDA introduced documentary evidence establishing that both of the active ingredients in WRM–RID, piperazine phosphate and arecoline hydrobromide, were shipped from New York to Bingman Laboratories in Ohio. (*See* Doc. #8 at 14–15.) Although Bingman raises the issue of interstate commerce in its answer, Bingman does not present any evidence contradicting the FDA's evidence. Therefore, there is no genuine issue of material fact with respect to the shipment of WRM–RID in interstate commerce.

The Court concludes that the FDA has met its burden on summary judgment. There is no genuine issue of material fact that WRM–RID is an adulterated animal drug that was held for sale after shipment in interstate commerce. Unless Bingman can show a genuine issue with respect to a legally recognized defense, the Court must enter judgment for the FDA.

### B. Bingman's Defenses

#### 1. Grandfather clause

Bingman argues that WRM–RID is exempt from the requirements of the Act under the 1962 grandfather clause. *See* 21 U.S.C. § 321(p) (note). Therefore, Bingman asserts that it "can continue to market and sell this product with impunity." (Doc. #9 at p. 7.) The Court disagrees with Bingman for two reasons.

■ First, even if WRM–RID satisfies the conditions of the 1962 grandfather clause, WRM–RID is only exempt from the "effectiveness" requirements of the Act. Bingman would still be required to show that WRM–RID is generally recognized as safe. *United States v. Articles of Drug; 5,906 Boxes,* 745 F.2d 105, 108 (1st Cir.1984).

Second, and more important, WRM–RID does not satisfy all of the conditions of the grandfather clause. The Act was amended in 1962 to add the "effectiveness" requirement to the definition of a "new" drug. *See* 21 U.S.C. § 321(p)(1) (note). The 1962 grandfather clause exempts certain drugs on the market before 1962 from the effectiveness requirement. A drug qualifies for the exemption if, in 1962, the drug, among other things, did not qualify as a "new" drug as defined by Section 201(p) of the 1938 Act. *Articles of Drug; 5,906 Boxes,* 745 F.2d at 108. "[T]he [1938] Act's definition of a 'new drug' before the 1962 Amendments was identical to the present definition ... except that 'effectiveness' was not included." *Id.* Thus, a combination drug was "new" under the 1938 Act if the drug was not generally recognized as safe even if its component parts were recognized as safe.

Bingman has the burden of coming forward with evidence that WRM–RID, as a combination drug, was recognized in 1962 as safe. Again, Bingman has produced evidence that tends to establish that each of the component parts of WRM–RID—arecoline hydrobromide and piperazine phosphate— was generally recognized in 1962 as safe. (See Doc. #9 at pp. 8–14 and referenced exhibits.) Bingman has failed, however, to show, or even to argue, that WRM–RID as a combination drug was generally recognized as safe in 1962. Therefore, there is no genuine issue of material fact that Bingman fails to satisfy an essential condition of the grandfather clause.

#### 2. Due Process

■ Bingman asserts that the FDA violated its constitutional· right to due process by seizing the WRM–RID without a hearing. This assertion is without merit because the Supreme Court has held that it is not a violation of due process for the government to seize property under the Act without holding a prior hearing. *Ewing v. Mytinger & Casselberry, Inc.,* 339 U.S. 594, 598–600, 70 S.Ct. 870, 872–73, 94 L.Ed. 1088 (1950).

#### 3. Estoppel

■ Bingman also suggests that its contacts with the FDA over the past 40 years and the absence of any previous enforcement action against Bingman bar this action. (*See* Doc. #9 at pp. 1, 8, 9.) The Court disagrees. Bingman is not entitled to a waiver to distribute illegal animal drugs because the government has not enforced the law against it previously. *See Donovan v. Daniel Marr & Son, Co.,* 763 F.2d 477, 484 (1st Cir.1985). The Government has a duty to correct any previous mistakes in enforcing the law it

might have made. *United States v. 60 28–Capsule Bottles,* 211 F.Supp. 207, 215 (D.N.J. 1962), *aff'd* 325 F.2d 513 (3d Cir.1963). Finally, one cannot invoke estoppel to avoid the requirements of legislation, like the Act, enacted to protect the public from products that do not comply with the law. *See Scott Paper Co. v. Marcalus Manufacturing Co.,* 326 U.S. 249, 257, 66 S.Ct. 101, 105, 90 L.Ed. 47 (1945). Therefore, the Court concludes that the FDA's failure to prosecute Bingman in the past is in no way a defense to this current action.

## IV.   Conclusion

Upon consideration and being duly advised, the Court **GRANTS** the FDA's motion for summary judgment. The Court therefore **ORDERS** that the seized animal drug be condemned and destroyed.

**IT IS SO ORDERED.**