**UNITED STATES v. GENERAL INSTRUMENT CORP. et al.**

**Civ. No. 8586.**

United States District Court,
D. New Jersey.

Aug. 11, 1953.

584

Marcus Hollabaugh, Sigmund Timberg, Sp. Assts. to Atty. Gen., for plaintiff.

Milton, McNulty & Augelli, John Milton, Maxwell James, Jersey City, N. J., Elmer G. Van Name, Camden, N. J., for defendants.

FORMAN, Chief Judge.

Following the opinion in this case, D.C., 87 F.Supp. 157, the plaintiff filed a proposed form of final judgment in fifteen sections. The defendants have objected to certain sections of the judgment, proposed modifications thereof, and have suggested the addition of a new section. A hearing has been had and briefs were filed.

There was no dispute as to plaintiff's proposed sections I(A) to (E), (G) and (H), II, III, IV, V(A) (1) to (5) and (B), VII(A) and (C), IX(B) (1), X(C) (D) and (E), XI, XII, XIII, XIV and XV.

The following is a disposition of the arguments on the disputed sections:

Section I, Paragraphs (F) and (I)

■ For its Section I(F) the plaintiff proposes the following:

" 'Defendants' shall mean all parties defendant as named in the complaint in this cause except the individual defendants Nathan Hyman and Edward Hyman."

The defendants, relying on the case of Hartford-Empire Co. v. United States, 1945, 323 U.S. 386, 65 S.Ct. 373, 89 L.Ed. 322, object to this definition on the ground that it would include all individual defendants named in the case except as specifically excluded and would needlessly hamper the individuals particularly if they disassociated themselves from the corporate defendants and sought fresh positions in the industry. In the Hartford-Empire case the Supreme Court said:

"A word should be said concerning the inclusion in many paragraphs of the decree, and in many of the injunctions imposed, of various individual defendants who in the past have acted as, and who at present are, officers or directors of the corporate defendants. They offended against the antitrust laws by acting on behalf of, or in the name of, a corporate defendant. There are no findings, and we assume there is no evidence, that any of them have applied for, owned, dealt in, and licensed patents appertaining to the glassware art. Nor is there evidence or finding that, as individuals acting for their own account, any of them, as a principal, has entered into any of the arrangements found unlawful by the court. Despite these facts, in practically every instance where a corporate defendant is restrained from described action or conduct, these individuals, as individuals, are likewise restrained. Any injunction addressed to a corporate defendant may as various sections of the decree do, include its officers and agents. If the individual defendants are officers or agents they will be comprehended as such by the terms of the injunction. If any of them cease to be such, no reason is apparent why he may not proceed, like other individuals, to prosecute whatever lawful business he chooses free of the restraint of an injunction. On the other hand, if new officers

and directors take the places of these defendants, such new agents will automatically come under the terms of the injunction. There is no apparent necessity for including them individually in each paragraph of the decree which is applicable to the corporate defendants whose agreements and cooperation constitute the gravamen of the complaint. That these individuals may have rendered themselves liable to prosecution by virtue of the provisions of § 14 of the Clayton Act [15 U.S.C.A. § 24] is beside the point, since relief in equity is remedial, not penal." 323 U.S. at pages 433, 434, 435, 65 S.Ct. at page 396, 89 L.Ed. 322.

As a substitute for plaintiff's proposal defendants suggest the following:

" 'Defendants' shall mean all the corporate parties defendant as named in the complaint in this cause and shall exclude the individual defendants except where otherwise expressly named."

I shall accept the suggestion of the defendants modified as follows:

" 'Defendants' shall mean all the corporate parties as named in the complaint in this cause, their directors, officers and agents."

The individual defendants in this case were officers, directors or agents of the companies and as such they are encompassed in the definition of "defendants" as long as they serve in such capacities. If they completely disassociate themselves from their respective companies there is no reason to attempt to restrain them from pursuing normal activities. If they return to their companies they automatically find themselves under the cloud of the judgment.

■ The plaintiff proposes as its Section I(I) the following:

" 'Patents' shall mean United States Letters Patent and applications therefor, including all reissues, divisions, continuations or extensions thereof and patents issued upon said applications."

Defendants oppose this definition on the ground that taken in conjunction with the plaintiff's proposal contained later in its form of judgment covering compulsory licensing of patents within a period of five years from the date of the judgment, it would include patents which may be issued long after the expiration of the five year period upon applications made within that period. Inasmuch as this objection relates primarily to the question of licensing of future patents we will recognize and deal with defendants' objection subsequently but will accept the definition of "patents" as proposed by the plaintiff for inclusion in the judgment.

Section V, Paragraph (A), Subparagraphs (6) (7) and (8).

■ In Section V, Paragraph (A), Subparagraphs (6), (7) and (8) the plaintiff proposed the following:

"(A) Each of the following agreements is hereby adjudged and decreed to be unlawful under Sections 1 and 2 of the Sherman Act [15 U.S.C.A. §§ 1, 2] and is hereby terminated; and defendants are jointly and severally enjoined and restrained from the further performance or enforcement of any of the provisions of said agreements and of any agreements amendatory thereof or supplemental thereto:
* * *

"(6) Agreement dated April 28, 1939, between De Jur Amaco and Radio and General; (7) Agreement dated June 10, 1939, between Radio and General and (8) All contracts, agreements or understandings to which defendants Development, Radio and General are jointly or severally parties covering the licensing of patents relating to variable condensers."

Defendants oppose the inclusion of Subparagraphs (6) and (7) on the ground that the contracts described therein were not held to be entirely illegal in the opinion filed in this case. They are characterized therein, 87 F.

Supp. at page 194 and concern restrictions in dealing with tools which were held to be illegal transactions in the eyes of the antitrust laws and cast a shadow on the general conduct of the defendants with relation to the said laws. But those contracts have been completely performed and terminated. There is no likelihood of their being reopened or supplemented in any way. In view of this there is no reason to enjoin the defendants from any further performance or enforcement of the provisions contained therein. The opinion contains a finding as to the extent of their illegality and it is unnecessary to repeat it in the judgment. Consequently Subparagraphs (6) and (7) will be deleted.

The defendants objected to the words "or severally" in Subparagraph (8) following the word "jointly" for the reason that it could be construed to restrict the parties from entering individually into contracts with firms not parties to this litigation and otherwise impede the defendants from pursuing normal and legitimate business relationships. Such an interpretation should not be given and to avoid its possibility the words "any two or more of the" shall be interpolated between the word "which" and the word "defendants". This treatment will obviate the necessity of inserting the word "mutual" before the word "understandings" as suggested in proposed miscellaneous amendments.

Defendants ask for the deletion of Section VI of the judgment as proposed by the plaintiff. It reads as follows:

"(A) Each defendant is hereby enjoined and restrained from entering into, performing, adopting, adhering to, maintaining or furthering, directly or indirectly, or claiming any rights under, any combination, conspiracy, contract, agreement, arrangement, understanding or plan or program with any person engaged in the manufacture or distribution of variable condensers which has as its purpose or effect:

"(1) Limiting, restraining or preventing the sale of tools, dies, fixtures, or jigs, used in the manufacture of variable condensers, to any person or for use in any specified territory;

"(2) Limiting, reducing or restricting the types, models, qualities or quantities of variable condensers which are or may be developed or manufactured;

"(3) Excluding any manufacturer or distributor of variable condensers from any territory or market, or interfering with or restricting any such manufacturer or distributor in competing in any territory or market;

"(4) Fixing, maintaining or adhering to prices or price ranges or other terms and conditions of sale or distribution of variable condensers;

"(5) Limiting or restricting, in any manner, the exercise of independent decision in the acquisition of patents or patent rights.

"(B) Each defendant is hereby enjoined and restrained from entering into any contract, agreement or understanding with the purpose or effect of admitting the validity of any patent not issued at the time of such admission."

The defendants contend that the restraints of this section are too broad and would perpetually restrict them from engaging in normal and valid contracts unrelated to any of the issues raised in this litigation. Specifically as to Subparagraph (1) of Paragraph A, the defendants submit that they would be precluded from making available to another manufacturer tools with which to make condensers in the event of a war emergency, when they were operating at full capacity, and still retain any control over their tools. This provision is justified by the conduct of the defendants as found in the opinion herein, and the contingency cited by the defendants may be regarded as exposing them to a remote hazard, which hazard could be removed by an appeal to the court under the sec-

tion providing for retention of jurisdiction.

■ The defendants construe Subparagraph (2) as prohibiting agreement between a distributor and a manufacturer wherein the distributor orders the manufacturer to produce a special model in accordance with a new design adopted by the distributor, because thereby a prior model would be rendered obsolete and would be replaced. This the defendants submit would be a limiting or restricting of the given type or model in violation of this provision. This construction is far-fetched. The provision as proposed seen in the light of reason is an appropriate regulation to be observed by the defendants in this industry.

■ To the extent that the defendants object to Subparagraph (3) on the ground that they would be perpetually restrained in making agreements with the distributors or manufacturers who are not defendants in this case involving provisions for valid territorial and marketing restrictions, the plaintiff's proposal is too broad. The defendants, however, should be enjoined from contracting between themselves in accordance with the terms of this Subparagraph. Hence Subparagraph (3) will be revised in a new paragraph (B) in the following manner:

"(B) The defendants as between themselves are hereby enjoined and restrained from entering into, performing, adopting, adhering to, maintaining or furthering, directly or indirectly, or claiming any rights under any combination, conspiracy, contract, agreement, arrangement, understanding or plan or program which has as its purpose or effect:

"(1) Excluding each other from any territory or market, or interfering with or restricting each other in competing in any territory or market;"

It is probable that in the totality of the judgment proposed to be entered in this case restraints tantamount to this provision may be included. Nevertheless, this provision is appropriate to emphasize that the design of the judgment will be to create the maximum area for competition between the defendants General and Radio and to dissolve as far as possible any barriers to such competition.

■ As to Subparagraph (4) the defendants assert that it should be deleted because by its terms it would preclude valid price restrictions contained in patent licensing agreements in which they might engage in the future. To meet this objection insofar as it concerns patent licensing to or from persons not parties to this case a proviso shall be added to this subparagraph to read as follows:

"except that this provision shall not apply to valid restrictions contained in patent licenses between a defendant and a person not a party to this case;".

Since Subparagraph (3) was removed from Paragraph (A) this Subparagraph number (4) in plaintiff's proposed judgment with the foregoing proviso shall become Subparagraph (3) of Paragraph (A).

■ The defendants contend that Subparagraph (5) is too vague and ambiguous. This objection should be sustained insofar as its scope over the relationship of the defendants and all other persons is concerned. However, it has definitive meaning as between the defendants General and Radio in view of the findings in the opinion in this case. Hence the provision will be incorporated as Subparagraph (2) of the new Paragraph (B) as above directed.

The defendants object to the inclusion of plaintiff's Paragraph (B), asserting that it would preclude them from engaging in the common practice of giving or receiving a license upon a patent, the application for which has been filed but is still pending, in which license the validity of the patent, when issued, is admitted. They claim that they would be prejudiced in that competitors could obtain licenses containing such a pro-

vision but that licensors might refuse a license to them since it would not include a like provision.

■ The Supreme Court has held that a licensee may challenge the validity of a patent which he has been licensed to use, and that he is neither estopped from contesting the patent by acceptance of the license, MacGregor v. Westinghouse Co., 1947, 329 U.S. 402, 67 S.Ct. 421, 91 L.Ed. 380; Sola Electric Co. v. Jefferson Co., 1942, 317 U.S. 173, 63 S.Ct. 172, 87 L.Ed. 165, nor barred by his own covenant not to contest the patent, Katzinger Co. v. Chicago Mfg. Co., 1947, 329 U.S. 394, 67 S.Ct. 416, 91 L.Ed. 374. In all of the above cases the licenses contained price fixing provisions, but the case of Scott Paper Co. v. Marcalus Co., 1945, 326 U.S. 249, 66 S.Ct. 101, 90 L.Ed. 47, indicates that this factor was not the gravamen of those decisions. There, where no such provision was involved, the Court held that the assignor of a patent was not estopped from contesting the validity of the assigned patent in a suit on it brought against him by his assignee, stated:

"It is thus apparent that the patent laws preclude the patentee of an expired patent and all others including petitioner from recapturing any part of the former patent monopoly; for those laws dedicate to all the public the ideas and inventions embodied in an expired patent. They do not contemplate that anyone by contract or any form of private arrangement may withhold from the public the use of an invention for which the public has paid by its grant of a monopoly and which has been appropriated to the use of all. The rights in the invention are then no longer subject to private barter, sale, or waiver. Cf. Phillips Co. v. Grand Trunk Western R. Co., 236 U.S. 662, 35 S.Ct. 444, 59 L.Ed. 774; Midstate Horticultural Co. v. Pennsylvania R. Co., 320 U.S. 356, 361, 64 S.Ct. 128, 131, 88 L.Ed. 96; Brooklyn Sav. Bank v. O'Neil, 324 U.S. 697, 704, 65 S.Ct.

895, 900, 89 L.Ed. 1296. It follows that the patent laws preclude the petitioner assignee from invoking the doctrine of estoppel, as a means or continuing as against respondent, his assignor, the benefit of an expired monopoly, and they preclude the assignor from estopping himself from enjoying rights which it is the policy of the patent laws to free from all restrictions. For no more than private contract can estoppel be the means of successfully avoiding the requirements of legislation enacted for the protection of a public interest." 326 U.S. at pages 256–257, 66 S.Ct. at page 105, 90 L.Ed. 47.

■ It would appear, therefore, that whether or not price restrictions were included, an agreement by a licensee not to contest the validity of a patent would unlawfully extend the scope of monopoly granted under the patent laws beyond their boundaries into the domain where the public has an interest, to which such a private contract would be repugnant. Consequently it would seem appropriate here, in view of the defendants' past behavior to enjoin inclusion of provisions admitting the validity of any patent not issued at the time of such admission in patent licenses engaged in by the defendants. Therefore, plaintiff's proposal in this respect will be included in the judgment. It will be designated as Paragraph (C) in Section VI as a result of previously discussed changes in the paragraphing of this section.

Proposed Dedication of Patents— Sections VII and IX

■ In Paragraph (B) of Section VII the plaintiff asks that patents relating to variable condensers now owned or controlled by Development be dedicated to the public, and in Paragraph (A) of Section IX the plaintiff asks that the same step be taken with regard to such patents owned or controlled by each defendant other than Development, or jointly with any other defendant, prior to the date of the judgment, or trans-

ferred to it by Development pursuant to Section VII. The defendants strenuously object to these provisions, maintaining that dedication is not a permissible requirement under existing law.

This direction is in an area left open by the decision of the Supreme Court in United States v. National Lead Co., 1947, 332 U.S. 319, 67 S.Ct. 1634, 91 L.Ed 2077, which substantially diluted its pronouncement in Hartford-Empire Co. v. United States, 1945, 323 U.S. 386, 65 S.Ct. 373, 89 L.Ed. 322, in which the Court determined that dedication as directed by the district court was confiscatory. In the National Lead case the Court said [332 U.S. 338, 67 S.Ct. 1643]:

> "While it has been contended that, because of the decision of this Court in Hartford-Empire Co. v. United States, 323 U.S. 386, 65 S.Ct. 373, 89 L.Ed. 322, the District Court was not free in the present case to require the issuance of royalty-free licenses, we feel that, without reaching the question whether royalty-free licensing or a perpetual injunction against the enforcement of a patent is permissible as a matter of law in any case, the present decree represents an exercise of sound judicial discretion." Cf. United States v. Aluminum Co. of America, D.C. S.D.N.Y.1950, 91 F.Supp. 333.

Under the present circumstances, however, I do not believe that dedication of patents is required in order to free competition from the fetters fashioned by the defendants' illegal activities. This is not a situation where one enormous firm in the industry, overshadowing all competitors, owns a huge bundle of patents with which it maintained its dominance in violation of the antitrust laws and with which, even were it compelled to license them to competitors at reasonable royalties, it could preserve a competitive edge by virtue of the drag such royalties would have on the success of its competitors.

In the present case a sizeable firm other than the defendants (American Steel Package Company) was able to compete against the defendants in spite of the defendants' patent pooling arrangement. Here, too, when the defendants' cooperation with each other is ended and they are placed in a competitive stance as against each other by the terms of this judgment, the industry will not consist of a single great firm holding the bulk of the patents. Rather, the patents and the share of production will be distributed fairly evenly between at least two competing companies. In addition, some of the key patents pooled in violation of the law have expired. In view of all of these considerations it would appear that compulsory licensing of patents held by the defendants at the date of the judgment at reasonable, nondiscriminatory royalties together with the requirement of similar licensing of patents obtained within a period of five years from the date of the judgment would suffice to free competition in the variable condenser industry.

Therefore, the plaintiff's proposal requiring dedication of patents held by Development and other defendants at the date of the judgment will be denied.

Paragraph (B) of Section VII will read:

> "(B) Defendant Development is hereby ordered and directed within 30 days following entry of this judgment to transfer or assign all patents or patent rights owned or controlled by it to the person (including other defendants) from whom such patents or patent rights were acquired—".

The defendants' proposal for assignment by Development of two patents, Numbers 1,928,310 of September 26, 1933 and 1,947,069 of February 13, 1934, to General will be denied, as these patents have expired. Defendants proposed that a third patent, No. 2,064,620 of December 15, 1936, should be assigned by Development to Radio. Since this

patent will have only about four months to run after the date of this judgment it is assumed that its value can be of no great moment and provision will be made in the judgment for disposition of this patent as proposed by the defendants by adding the following clause to Paragraph (B) of Section VII: "except that Patent No. 2,064,620 of December 15, 1936 shall be assigned by Development to Radio."

Section IX, Paragraph (A) providing for dedication of patents by defendants other than Development must be deleted.

## Section VIII

■ The plaintiff's proposed Section VIII reads as follows:

"(A) Following the distribution of the assets of defendant Development and its dissolution pursuant to Section VII of this Judgment, each remaining defendant is hereby enjoined and restrained from holding, acquiring or claiming, directly or indirectly, any rights under any patents, manufacturing or sale facilities, plants or other assets relating to the manufacture of variable condensers, in conjunction with any other defendant or any other person engaged in the manufacture of variable condensers;

"(B) Defendants are hereby jointly and severally enjoined and restrained from acquiring, directly or indirectly, by purchase, merger, consolidation or otherwise, after entry of this Judgment, ownership or control of the business, physical assets (including patents, tools, dies, fixtures and jigs), good will, capital stock or securities, or any part thereof, of any person engaged in the manufacture of variable condensers, except that nothing herein shall prevent an individual defendant from acquiring stock in a corporation of which he is, or was at any time between July 17, 1946, and the date of this Judgment, an officer."

Defendants ask for the deletion of this entire section because it would prohibit any defendant for all time from achieving legal horizontal growth or expansion in variable condenser manufacture and from acquiring from a competitor even a tool or die, a patent in any field, a license to a patent in conjunction with a competitor and any part of the capital stock of a competitor. The plaintiff contends that the findings in this case justify the prohibitions of this section in order to guard against a contingency wherein Radio and General should be able to defeat the terms of this judgment by merging or entering into some other form of consolidation. Also it seeks hereby to prevent either Radio or General from eliminating the competition of other manufacturers of variable condensers by purchasing ownership or control of such manufacturers.

As has been indicated it is felt that competition can only thrive in this industry if the defendants General and Radio are made completely independent of each other. To further this end Paragraph (A) is appropriate.

■ Paragraph (B) appears to be too broad if it should be construed to prevent General or Radio from acquiring occasional items in the way of tools or licenses to patents for their individual use. It would appear necessary, however, to assure the separation of General and Radio as competitors and to prevent them either jointly or severally, from acquiring ownership or control of competitors in the variable condenser field for a substantial period following entry of this judgment unless by the court's permission after a showing that competition would not be substantially impaired under the reservation of jurisdiction clause of the judgment. Variable is too small a factor in the industry to bind it by these regulations. Accordingly, plaintiff's proposed Paragraph (B) will be modified to read as follows:

"(B) Defendants, General and Radio, are hereby enjoined and restrained from acquiring directly or indirectly by purchase, merger, consolidation or otherwise the ownership or control of the business of the

other, and, whether jointly or severally, for a period of seven years after the entry of this Judgment of any other person engaged in the manufacture of variable condensers."

█ Plaintiff's proposed proviso in said Paragraph (B) permitting an individual defendant to acquire stock in a corporation of which he is or was at any time between July 17, 1946, and the date of the judgment an officer will be deleted as conferring no right upon such an individual that he does not already possess and as unnecessary.

## Sections IX and X

█ In Section IX(B) (2) plaintiff proposes that the defendants should be enjoined from threatening or instituting suits for acts of infringement of any patent owned or controlled by any defendant and issued *or applied for* within five years after the entry of this judgment, unless there had been a refusal to enter into a license agreement after request so to do by such defendant as provided for in Section X. Defendants object to the extension of the judgment to those applications for patents which may be made during the five year period and upon which applications the actual patents may not issue until several years after the five year period. They suggested the elimination of this proposed feature of the judgment relating to patent applications made during the five year period by the substitution of a new definition of the word "patents" for that proposed by the plaintiff. They also suggest the elimination of the words "or applied for" from Section IX, Paragraph (B) (2) and Section X, Paragraph (A). In this way, they submit, the judgment would control only those applications upon which patents would actually be issued during the five year period.

In the light of the time that has elapsed in this litigation and the general circumstances of the industry it would appear unnecessary to extend this injunction and license requirement to patents issuing at a date later than the expiration of five years after the entry of judgment, even though applications were filed within that period. However, there is no fault to be found with the plaintiff's definition of patents, and as has been previously indicated, that will not be disturbed. The words "or applied for" will be deleted from plaintiff's proposed Section IX, Paragraph (B) (2) and Section X, Paragraph (A), which will accomplish the result the defendants seek.

█ The defendants requested an addition to Section X, Paragraph (B) in the following language:

" * * * Such grant may, at the option of the licensor, be conditioned upon the reciprocal grant of a license by the applicant, at a reasonable royalty, under any and all patents covering variable condensers, now issued or pending, or issued within five years from the date of this decree, if any, owned or controlled by such applicant. Such license or reciprocal license may, at the option of either party, contain a provision for the inspection of the books and records of the licensee by an independent auditor who shall report to the licensor only the amount of royalty due and payable and no other information; . * * *."

The defendants buttress this request with the decision in United States v. National Lead Co., 1947, 332 U.S. 319, 67 S.Ct. 1634, 91 L.Ed. 2077, in which a provision for reciprocal licensing was approved. That was a different situation from the one that obtains here. In view of the pattern of the conduct of General and Radio in this case and their relatively dominant positions in the industry, it would appear that a wholesome climate for competition can only be created in this instance by depriving them of their ability to condition compulsory licensing of their patents upon reciprocal licensing up to the expiration of the five year period. The period during which they will be thus limited is entirely reasonable. No advantage or disadvantage will accrue to the defend

594

ants as between themselves by lack of the right to compel reciprocity, for each may apply for non-exclusive licenses to another. The advantage that non-defendants may enjoy by being able to demand licenses from the defendants without reciprocating can only act as a proper stimulant towards competition, having in mind the limited period during which it may occur. Hence the proposal of defendants of this addition to Section X, Paragraph (B) must be declined. See United States v. United States Gypsum Co., 1950, 340 U.S. 76, 93–94, 71 S.Ct. 160, 95 L.Ed. 89.

Defendants' Proposed Section XVI

 Defendants propose as Section XVI of the judgment the addition of the following:

"* * * This judgment shall not be construed to forbid normal business transactions of any of the corporate defendants with its selling agents or consignees, persons or corporations rendering services to it, or customers; or to prohibit transactions with citizens or corporations of foreign nations; or to prevent any defendants from availing of the benefits of the Acts of Congress of August 17, 1937 commonly known as the Miller-Tydings Act [15 U.S.C.A. § 1], or (save as elsewhere in the judgment provided) of the benefits of the Patent Laws."

The plaintiff objected to the inclusion of the clause referring to the Miller-Tydings Act and argued that defendants should be enjoined from invoking any benefits under that law for a period of time as required in the judgment in the case of United States v. Bausch & Lomb Co., 1944, 321 U.S. 707, 64 S.Ct. 805, 88 L.Ed. 1024. In that case the defendants operated under the provisions of the Miller-Tydings Act. There was no evidence here of such involvement upon the part of the defendants. In fact, it is apparent that the operations of these defendants do not lend themselves to a method of business under which the Miller-Tydings Act could be advantageous-

ly invoked. Furthermore, there would seem to be no necessity for precluding them from its coverage in a legitimate way for any limited period of time such as suggested by the plaintiff.

The parenthetical clause "(save as elsewhere in the Judgment provided)" should be eliminated and the Section should commence with the words "Except as otherwise specifically provided in this Judgment." With this modification the section should be added to the judgment.

Let a judgment in conformity with the foregoing be submitted on or before September 14, 1953.